UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CORDIA FOSTER and CISLYN WRIGHT,        21-cv-11224 (CM)

                              *Plaintiffs*,

      -against-

ELYSE DULA a/k/a ELYSE SNOW
and IAN K. SNOW,

                              *Defendants*.
-----------------------------------------------------------X

        **Memorandum of Law in Opposition to Defendants' Untimely *Daubert* Motion**

                                            Law Offices of Scott A. Lucas
                                            600 Mamaroneck Ave., Suite 400
                                            Harrison, New York 10166
                                            (direct) (646) 342-1139
                                            (office) (646) 632-3737
                                            scott@lucasemploymentlaw.com
                                            *Attorneys for Plaintiffs*

Plaintiffs, through their undersigned counsel, respectfully submit that Defendants' untimely *Daubert* motion challenging Plaintiffs' expert (Jennie Weiner Ed.D.) should be denied for at least eight reasons:

- First, Defendants' motion is untimely as a matter of law, and Defendants do not have (and do not claim to have) "good cause" for failing to file their motion in a timely manner.

- Second, the Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus.

- Third, Defendants do not deny the existence of negative stereotypes regarding African-Americans in general, or the "Mammy" and "Sapphire" stereotypes discussed by Dr. Weiner.

- Fourth, the Second Circuit has confirmed that social science "research, theories and opinions cannot have the exactness of hard science methodologies," and that "expert testimony need not be based on statistical analysis in order to be probative."

- Fifth, expert testimony on stereotyping is not only appropriate, but arguably necessary, because the stereotyping at issue goes beyond the understanding of ordinary jurors.

- Sixth, Defendants' criticisms of Dr. Weiner's Report (attached as Ex. "A" to the May 25, 2023 Affidavit of Gerard Riso ["Riso Aff."]), which are set forth in the "Expert Report of Gregory Mitchell, Ph.D" (Riso Aff. Ex. "C"), were addressed and forcefully rebutted and undermined in Dr. Weiner's Rebuttal Report (see Riso Aff. Ex. "B").

- Seventh, there is no merit to Defendants' argument that the testimony of Plaintiffs' expert will confuse the jury

- Eighth, the criticisms advanced by Defendants go to weight, not admissibility, and are the proper subject of cross-examination, not wholesale exclusion.

(Dr. Weiner's reports [attached as Riso Aff. Exhibits "A" and "B"] are incorporated by reference for the opinions and information contained therein.)

## Point I

**Defendants' motion is untimely as a matter of law,
and Defendants do not have (and do not claim to have) "good cause"
for failing to file their motion in a timely manner**

Defendants' motion is untimely. This Court's Individual Rules of Practice clearly states that:

> Unless the Court orders otherwise, motions to exclude testimony of experts, pursuant to Rules 702-705 of the Federal Rules of Evidence and the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) line of cases, must be made by the deadline for dispositive motions and should not be treated as motions in limine.

Individual Rules of Practice, Section V(E)(3).

The Case Management Plan provides that the dispositive motion deadline is the same as the deadline for filing the Joint Pretrial Order (Case Management Plan, ¶ 11), and the Joint Pretrial Order Deadline (after two extensions) was December 16, 2022. Dkt. 28.

Defendants offer no excuse for failing to comply with this deadline. Nor any excuse for purporting to require the complex issues involved in a *Daubert* challenge to be addressed in a compressed motion *in limine* framework.

Moreover, the Case Management Plan provides that it may be altered or amended "only on a showing of good cause *that is not foreseeable at the time this order is entered*." Dkt. 28. Defendants do not and cannot claim that it was unforeseeable that they would have to comply with this Court's deadline for making a *Daubert* motion if Plaintiffs proffered an allegedly improper expert report.

It is respectfully submitted that their untimely motion should be denied for these reasons alone.

(The points that follow are offered in the event that the Court elects to excuse Defendants' failure to comply with the applicable deadline [albeit in a more abbreviated form than they would be offered in the context of regular motion practice].)

**Point II**

**It is settled that unlawful discrimination can stem from stereotypes
and other types of cognitive biases, as well as from conscious animus**

Whether racial stereotyping occurred is critical because "stereotyped" impressions or assumptions about the characteristics or abilities of racial or ethnic minorities violate the anti-discrimination laws. *Jin Zhao v. State Univ. of N.Y.*, 472 F. Supp. 2d 289, 309-10 (E.D.N.Y. 2007) (Bianco, J.) ("both the Supreme Court and the Second Circuit have held that decisions resulting from 'stereotyped' impressions or assumptions about the characteristics or abilities of women violate Title VII. [citations omitted] These same principles undoubtedly apply with equal force to racial and ethnic stereotyping."); *Weiping Liu v. Indium Corp. of Am.*, 2019 U.S. Dist. LEXIS 137786, at *33-34 (N.D.N.Y. Aug. 15, 2019) (same); see also *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239-58 (1989) (regarding impermissible gender stereotyping); *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993) (decision-making influenced by stereotypes is "the essence of what Congress sought to prohibit in the ADEA."); *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 59 (1st Cir. 1999) ("The Supreme Court has long recognized that unlawful discrimination can stem from stereotypes and other types of cognitive biases, as well as from conscious animus.").

For example, in *Humphries v. City Univ. of N.Y.*, 2013 U.S. Dist. LEXIS 169086, at *29 (S.D.N.Y. Nov. 26, 2013), the plaintiff asserted that her supervisors used code words that invoked the stereotype of the "angry black woman," including "aggressive, agitated, angry, belligerent, disruptive, hands on hip, hostile, threatening." The court found that use of stereotyping "adjectives to describe an employee could, in combination with other concrete factual allegations, support a claim of racial and/or gender discrimination." *Id.*  Though the

plaintiff in *Humphries* could not point to any other "concrete factual allegations" to support her discrimination claim, Defendants here do not and cannot argue as much because, inter alia, there is also evidence in the record that Defendant Dula referred to them as "*Those Black bitches!*" (see Ex. "1" to the May 30, 2023 Declaration of Scott A. Lucas ["Lucas Decl."], [excerpt of Cislyn Wright's deposition transcript at 84:10-15]) and "*Dirty Jamaicans*" (Lucas Decl. Ex. "2" [excerpt of Cordia Foster's deposition transcript at 128:10-19]).

## Point III

**Defendants do not deny the existence of negative stereotypes regarding African-Americans in general, or the "Mammy" and "Sapphire" stereotypes discussed by Dr. Weiner**

Defendants do not deny the existence of negative stereotypes regarding African-Americans in general, or the "Mammy" and "Sapphire" stereotypes discussed by Dr. Weiner. Instead, as detailed in Point IV below, they impermissibly attempt to raise the bar by suggesting that Plaintiffs must advance scientific proof regarding the precise distribution and impact of such stereotypes. See Defendants' Memorandum of Law at pg. 2.

## Point IV

**The Second Circuit has confirmed that social science "research, theories and opinions cannot have the exactness of hard science methodologies," and that "expert testimony need not be based on statistical analysis in order to be probative."**

While Defendants fault Dr. Weiner for not having sufficient "empirical or scientific evidence" to prove the specific degree to which those stereotypes have impacted the specific behavior of particular individuals and regions within the United States (Defendants' Memorandum of Law at pg. 2), their critique is misplaced because, as the Second Circuit has acknowledged:

> Social science "research, theories and opinions cannot have the exactness of hard science methodologies," and "expert testimony need not be based on statistical

4

analysis in order to be probative." "[P]eer review, publication, potential error rate, etc. . . . are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology of theory behind it."

*United States v. Joseph*, 542 F.3d 13, 21 (2d Cir. 2008) (internal and external citations omitted), *abrogated in part on other grounds by United States v. Ferguson*, 676 F.3d 260, 276 n.14 (2d Cir. 2011); see also *Packard v. City of N.Y.*, 2020 U.S. Dist. LEXIS 54005, at *13 (S.D.N.Y. Mar. 25, 2020) ("Though not based on 'traditional scientific methods,' Brown's opinions are "nevertheless based on data—including personal experience . . . review of police manuals and other primary sources . . . —of a type reasonably relied on by experts in various disciplines of social science.'") (citations omitted).

**Point V**

**Expert testimony on stereotyping is not only appropriate, but arguably necessary, because the stereotyping at issue goes beyond the understanding of ordinary jurors**

Dr. Weiner's testimony goes beyond the understanding of ordinary jurors and will assist the trier of fact. As indicated in the testimony of Ms. Dula, one must be able to identify racially stereotyped thinking to know if it's occurring:

> Q: Do you agree, Ms. Dula, that one must be able to identify racially stereotyped thinking to know if it's occurring?
>
> A: Yes, I would – I'm not an expert in human thought or racially stereotyped thinking or what constitute it -- constitutes it but I would assume, generally, yes, you would need to know.

Lucas Dec. Ex. "3" (excerpt of Elyse Dula's deposition transcript at p. 32:19-25).

Based on the ample per-reviewed literature and other information cited in her Report (attached as Riso Aff. Ex. "A"), Dr. Weiner can provide the jury an interpretive framework for, among other things, understanding what can cause one of those stereotypes (the Mammy) to be

5

replaced by the other (the Sapphire), and can do so in a way that carefully avoids invading the province of the jury. See generally *Price Waterhouse v. Hopkins*, 490 U.S. 228, 255-56 (1989) (recognizing the utility of expert testimony on stereotyping in gender discrimination case). This is critical because Defendants do not claim that the average juror knows anything about these stereotypes. *Hnot v. Willis Grp. Holdings, Ltd.*, 2007 U.S. Dist. LEXIS 40243, at *6 (S.D.N.Y. June 1, 2007) (Lynch, J.) ("expert testimony grounded in academic study and practical experience not available to the average layperson can be helpful to the jury.") (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)).

Accordingly, Dr. Weiner's testimony is not only appropriate, but *arguably necessary*. See *Doe v. Vill. Of Mamaroneck*, 462 F. Supp. 2d 520, 549 (S.D.N.Y. 2006) (McMahon, J.) ("The problem with plaintiffs' argument is that there is no evidence in the record about particular stereotypes that are applicable to Latinos (although there are, no doubt, persons who are expert in such matters who could have testified on the subject)."); *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) ("The court holds that evidence of racial stereotyping in general would require expert testimony").

## Point VI

**Defendants' criticisms of Dr. Weiner's Report, which are set forth in the "Expert Report of Gregory Mitchell, Ph.D," were addressed and forcefully rebutted and undermined in Dr. Weiner's Rebuttal Report**

Defendants' criticisms of Dr. Weiner's Report (attached as Ex. "A" to the May 25, 2023 Affidavit of Gerard Riso ["Riso Aff."]), which are set forth in the "Expert Report of Gregory Mitchell, Ph.D" (Riso Aff. Ex. "C"), were addressed and forcefully rebutted and undermined in Dr. Weiner's Rebuttal Report (see Riso Aff. Ex. "B").

## Point VII

**There is no merit to Defendants' argument that
the testimony of Plaintiffs' expert will confuse the jury**

Defendants argue that the testimony of Plaintiffs' expert would confuse the jury. That argument is without merit. Indeed, the opposite is true. As Judge Lynch concluded in *Hnot v. Willis Grp. Holdings, Ltd.*, 2007 U.S. Dist. LEXIS 40243, at *7 (S.D.N.Y. June 1, 2007):

> if [plaintiff's stereotyping expert] tells the jury that certain conditions are conducive to permitting gender stereotyping to influence employment decisions, and plaintiffs fail to show that those circumstances are present in defendants' workplace, the expert testimony will neither confuse nor mislead the jury, but rather will help the jury to critically evaluate the plausibility of plaintiffs' claims of discrimination.

*Id.*, 2007 U.S. Dist. LEXIS 40243, at *7 (citation omitted).

## Point VIII

**The criticisms advanced by Defendants go to weight, not admissibility, and are the
proper subject of cross-examination, not wholesale exclusion**

The criticisms advanced by Defendants go to weight, not admissibility, *Hnot v. Willis Grp. Holdings, Ltd.*, 2007 U.S. Dist. LEXIS 40243, at *4 (S.D.N.Y. June 1, 2007) (Lynch, J.), and are the proper subject of cross-examination, not wholesale exclusion. *Id.*

**Conclusion**

While Defendants are correct that some courts have elected to preclude stereotyping experts from testifying for various reasons, it is respectfully submitted that the points above demonstrate that Dr. Weiner should not be precluded from providing expert testimony in this matter.  Accordingly, Plaintiffs respectfully request that this Court deny Defendants' untimely motion.

Dated:   May 30, 2023

Law Offices of Scott A. Lucas
600 Mamaroneck Ave., Suite 400
Harrison, New York 10528
(direct) (646) 342-1139
(office) (646) 632-3737
scott@lucasemploymentlaw.com
*Attorneys for Plaintiffs*

By: _____
Scott A. Lucas