UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CORDIA FOSTER and CISLYN WRIGHT,                    21-cv-11224 (CM)

                              *Plaintiffs*,

             -against-

ELYSE DULA a/k/a ELYSE SNOW
and IAN K. SNOW,

                              *Defendants*.
-----------------------------------------------------------X


# Memorandum of Law in Support of
# Plaintiffs' Fee Application


                              Respectfully submitted,

                              Law Offices of Scott A. Lucas
                              600 Mamaroneck Avenue
                              Suite 400
                              Harrison, New York 10528
                              (direct) (646) 342-1139
                              (office) (646) 632-3737
                              scott@lucasemploymentlaw.com

# Table of Contents

Page

**Summary** . . . . . . . . . . 1

**Background** . . . . . . . . . . 2

**Statutory Authority & Standard** . . . . . . . . 4

**Point I**

**Plaintiffs are Prevailing Parties** . . . . . . . 4

**Point II**

**The fee award may not be reduced merely because
the fee would be disproportionate to
the financial interest at stake in the litigation** . . . . . 5

**Point III**

**Plaintiffs' claims are based on a common core of facts and related theories** . 6

**Point IV**

**To simplify the Court's work in connection with
Plaintiffs' fee application, the requested fees have been
significantly reduced to account for time spent on certain matters,
and, which further reductions are unwarranted,
a substantial further reduction of fees is consented to as discussed below** . 9

**Point V**

**Plaintiffs' Fee Request Should Be Granted** . . . . . 11

**Conclusion** . . . . . . . . . . 21

# Table of Cases

Page

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008) . . . . 11

*Barbour v. City of White Plains*, 700 F.3d 631 (2d Cir. 2012) . . . 5

*Brown v. Suggs*, index no. 605492-00 (N.Y. Sup. 2007) . . . . 13

*Casmento v Volmar Constr., Inc.*, 2022 US Dist. Lexis 225520 (SDNY Dec. 14, 2022) . . . . . . . 4, 6, 7

*Chopen v. Olive Vine, Inc.*, 2015 WL 1514390 (E.D.N.Y. 2015) . . . 15

*Choudhury v. Polytechnic Inst.*, 735 F.2d 38 (2d Cir. 1984) . . . 7

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) . . . . . 5

*Cooper v Upstairs, Downstairs of NY, Inc.*, 2021 US Dist. Lexis 59679 (S.D.N.Y. Mar. 29, 2021) . . . . 5

*Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522 (2d Cir. 1991) . . . 5

*Cush-Crawford v Adchem Corp.*, 271 F3d 352 (2d Cir 2001) . . . 3

*Demirovic v Ortega*, 2018 U.S. Dist. Lexis 68790 (E.D.N.Y. Apr. 24, 2018) . 14

*Dominic v. Consolidated Edison Co.*, 822 F.2d 1249 (2d Cir. 1987) . . . 7

*Dunlap-McCuller v. Riese Org.*, 980 F.2d 153 (2d Cir. 1992) . . . 5

*Escamilla v Mosher Steel Co.*, 386 F Supp 101 (S.D. Tex. 1975) . . . 2, 8

*Fernandez v N. Shore Orthopedic Surgery & Sports Medicine, P.C.*, 2000 U.S. Dist. Lexis 5285 (E.D.N.Y. Feb. 4, 2000) . . . 4, 7

*Fisher v SD Protection Inc.*, 948 F3d 593 (2d. Cir. 2020) . . . 5

*G and P Warehouse, Inc. v. Cho's Church Ave Fruit Market Inc.*, 2016 WL 5802747 (E.D.N.Y. 2016) . . . . 11

*Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5 (S.D.N.Y. 2015) . . . 6

*Grochowski v. Ajet Constr. Corp.*, 2002 U.S. Dist. Lexis 5031 (S.D.N.Y. Mar. 27, 2002) 6

*Hines v City of Albany*, 613 F App'x 52 (2d Cir 2015) . . . . 7

*Hui Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1 (2d Cir. 2016) . . . 5

*Johnson v City of NY*, 2023 U.S. Dist. Lexis 22582 (E.D.N.Y. Feb. 8, 2023) . 13

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) . . . . 7

*Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363 (S.D.N.Y. 2015) . . 5

*Millea v Metro-North R.R.*, 658 F3d 154 (2d Cir 2011) . . . .4-5, 11, 18-19

*Moore v. Diversified Collection Servs., Inc.,* 2013 WL 1622949 (E.D.N.Y. March 19, 2013), *report & recommendation adopted by* 2013 WL 1622713 (April 15, 2013) . 11

*Natural Organics, Inc. v. Nutraceutical Corp.*, 2009 WL 2424188
  (S.D.N.Y. Aug. 6, 2006) . . . . . . . 20

*Perry v Ethan Allen, Inc.*, 115 F3d 143 (2d Cir 1997) . . . . 8

*Phillips v. Executor of Estate of Arnold*, 2013 WL 4458790 (W.D.Wash. 2013) . 14

*Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir. 1996) . . . 7

*Rosenberg, Minc & Armstrong v Mallilo & Grossman*, 39 A.D.3d 335 (1st Dept. 2007) 3

*Samborski v. Linear Abatement Corp.*, 1999 U.S. Dist. Lexis 14571
  (S.D.N.Y. Sept. 22, 1999) . . . . . . . 6

*Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008) . . . . 12

*Santana v. G.E.B. Medical Management*, 2017 WL 4927181 (N.Y. Sup. 2017) . 12

*Sharrock v Harris*, 489 F. Supp. 913 (S.D.N.Y. 1980) . . . . 4

*Sullivan v Aircraft Servs. Group, Inc.*, 2023 U.S. Dist. Lexis 155603
  (E.D.N.Y. Sept. 1, 2023) . . . . . . . 9

*Temidis v Intl. Bus. Machs. Corp.*, 2022 N.Y. Misc. Lexis 5503 (N.Y. Sup. 2022) . 3

*Townsend v. Ganci*, 566 B.R. 129 (E.D.N.Y. 2017) (Bianco, J.),
  *aff'd* 726 F. App'x 91 (2d Cir. 2018) . . . . . 4

*U.S.A. Famous Original Ray's Licensing Corp. v Tisi's Pizza & Pasta, Inc.*,
  2009 U.S. Dist. Lexis 111141 (S.D.N.Y. Dec. 1, 2009) . . . 14-15

*Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86 (2d Cir. 2004) . . . 6

*Xochimitl v Pita Grill of Hell's Kitchen, Inc.*, 2016 U.S. Dist. Lexis 121259
  (S.D.N.Y. Sep. 8, 2016) . . . . . . . 15

Plaintiffs, through their undersigned counsel, respectfully submit this Memorandum of Law in support of their fee application.

**Summary**

Plaintiffs Cordia Foster and Verona Wright commenced this action against Defendants Elyse Dula and Ian Snow alleging race discrimination and retaliation under 42 U.S.C. § 1981 and the New York State Human Rights Law, N.Y. Executive Law § 296 ("NYSHRL").

The case was tried on October 23, 24, 25, 26, 30, and 31, and resulted in a jury verdict for Foster in the amount of $8,800 for her NYSHRL race and color discrimination and harassment claim against Dula and for Wright in the amount of $8,800 for her NYSHRL race and color discrimination and harassment claim against Dula, and for Defendants on all other claims.

As detailed below:

(I)     Plaintiffs are "prevailing parties";

(II)    The fee award may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation;

(III)   Plaintiffs' claims are based on a common core of facts and related theories;

(IV)    The requested fees have been reduced to account for time spent on certain matters, and, which further reductions are unwarranted, a substantial further reduction of fees is consented to as discussed below; and

(V)     The reduced fees requested are reasonable based on counsel's experience.

## Background

<u>Ian Snow's Status as Defendant</u>

Snow was named as a co-defendant mainly because he was designated in written agreements as Plaintiffs' principal "Employer number 1" (Lucas Decl. Ex. 4), and was thus presumably a "necessary party" (*Escamilla v Mosher Steel Co.*, 386 F Supp 101, 105 (S.D. Tex. 1975)), and also a proper one given that no *Faragher-Ellerth* defense was asserted.

<u>Built-in Limitations on Scope of Damages</u>

As to the amount of damages awarded, it is important to bear in mind that Plaintiffs never sought any post-termination economic damages (i.e., back pay or front pay) because they promptly obtained alternative employment after being terminated. Nor did Plaintiffs obtain treatment from any mental health professionals that might have justified an award of more than garden variety emotion distress damages. Although Plaintiffs did unsuccessfully seek to recover damages in connection with a reduction in pay, those sought-after damages were quite limited because the pay reduction was only in place for about the last seven weeks of Plaintiffs' employment.

Moreover, while the jury obviously credited Plaintiffs' testimony that Plaintiffs' employer Dula engaged in explicitly racist behavior that affected the terms and conditions of their employment (Lucas Decl. Ex. 5 [trial tr. 529:12-530:4]), and Dula herself, a college-educated person (Lucas Decl. Ex. 5 [trial tr. 327:5]), admitted that the conduct with which she was charged was "*horribly racist*" (Lucas Decl. Ex. 5 [trial tr. 296:13-15; 44:10-12]), the potential for a

punitive damages award was foreclosed by the Court's refusal to allow the jury to exercise its discretion to award *any* punitive damages for such "*horribly racist*" behavior.[1]

In determining the appropriate level of attorney's fees, it is crucial to consider the full context of the plaintiffs' success. While the damages awarded were quite modest, this should not be the sole measure of Plaintiffs' victory. The jury's verdict affirmatively established that race discrimination occurred, which is a significant legal and moral finding. Both Plaintiffs feel vindicated by the jury's verdict.

Therefore, when assessing the degree of success achieved, the Court should consider not only the compensatory damages awarded but also Plaintiffs' clear vindication of their right under the NYSHRL to a workplace free of intentional race and color discrimination. The legal fees sought herein reflect only a portion of the extensive work required to achieve prevailing party status.

---

[1] This was manifest error. "If ever there was an issue of a 'high degree of moral turpitude,' racial discrimination sets the mark." *Temidis v Intl. Bus. Machs. Corp.*, 2022 N.Y. Misc. Lexis 5503, at *9 (N.Y. Sup. 2022); see also N.Y. Exec. Law § 297(9) (authorizing punitive damages). By its very nature, intentional discrimination is "*willful and malicious*," *Fuller v Rea (In re Rea)*, 606 BR 531, 540 (Bankr. S.D.N.Y. 2019), and "where an employer's deliberate conduct is found to constitute unlawful discrimination against an individual employee, it necessarily follows that such intent was for the purpose of causing injury[.]" *Townsend v. Ganci*, 566 B.R. 129, 134 (E.D.N.Y. 2017) (Bianco, J.), *aff'd* 726 F. App'x 91 (2d Cir. 2018). Nor could the verdict's modest size be seen as a reason to bar the jury from considering punitive damages. If anything, the reverse is true. *Rosenberg, Minc & Armstrong v Mallilo & Grossman*, 39 A.D.3d 335, 336 (1st Dept. 2007) (confirming that the small size of a damages award may justify a higher than ordinary ratio between compensatory and punitive damages) (citations omitted); *Cush-Crawford v Adchem Corp.*, 271 F3d 352, 359 (2d Cir 2001) ("It is often 'precisely [in the cases where no actual harm is shown] that the policy of providing an incentive for plaintiffs to bring petty outrages into court comes into play.'") (citations omitted).

**Statutory Authority & Standard**

The NYSHRL "allows for an award of attorney's fees to prevailing plaintiffs." *Belgrove v Bronner*, 2022 U.S. Dist. Lexis 218961, at *5 (S.D.N.Y. Dec. 1, 2022) (citing N.Y. Exec. Law § 297(10)).  "The Court applies the same standards to requests for fees under city and state law as it would to claims under the federal civil rights statutes." *Casmento v Volmar Constr., Inc.*, 2022 US Dist. Lexis 225520, at *6 (SDNY Dec. 14, 2022) (collecting cases). Accordingly, Plaintiffs, as prevailing parties (see below), should be awarded reasonable attorney's fees. *Sharrock v Harris*, 489 F. Supp. 913, 915 (S.D.N.Y. 1980) ("Although the award of attorneys' fees is expressly discretionary, Congress clearly intended that section 1988 be construed liberally and that successful plaintiffs be awarded attorneys' fees except under 'special circumstances.'").

Moreover, N.Y. Executive Law § 300 states:

> The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct.

**Point I**

**Plaintiffs are Prevailing Parties**

"The Second Circuit has found "substantial relief" to be any award of damages greater than a nominal sum." *Fernandez v N. Shore Orthopedic Surgery & Sports Medicine, P.C.*, 2000 U.S. Dist. Lexis 5285, at *22-23 (E.D.N.Y. Feb. 4, 2000) (citation omitted). For example, in *Millea v Metro-North R.R.*, 658 F3d 154 (2d Cir 2011), the plaintiff was the prevailing party despite receiving an award of just $613—i.e., about 3% of the total amount awarded in this case. Even though Plaintiffs did not win most of their claims, that does not affect their status as

prevailing parties. *Cooper v Upstairs, Downstairs of NY, Inc.*, 2021 US Dist. Lexis 59679, at *8

(S.D.N.Y. Mar. 29, 2021) (even though "[p]laintiff lost on the vast majority of [his] claims and

recovered just a fraction of the damages [he] sought, [his] limited success does not affect [his]

status as a 'prevailing party.'") (citing *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363,

367 (S.D.N.Y. 2015)).


## Point II

### The fee award may not be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation

"The whole purpose of fee-shifting statutes is to generate attorneys' fees that are

*disproportionate* to the plaintiff's recovery." *Millea v Metro-North R.R.*, 658 F3d 154, 169 (2d

Cir 2011) (emphasis in original). As the Second Circuit stated in *Fisher v SD Protection Inc.*,

948 F3d 593 (2d. Cir. 2020):

> In the context of analogous civil rights legislation, we have long held -- and we
> reiterate today -- that a fee may not be reduced merely because the fee would be
> "disproportionate to the financial interest at stake in the litigation." *Kassim*, 415
> F.3d at 252; accord *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 160 (2d Cir.
> 1992) (rejecting notion that "fees be proportional to the amount of damages
> recovered"); *Cowan v. Prudential Ins. Co. of Am.*, 935 F.2d 522, 527 (2d Cir.
> 1991) (holding that lodestar was not subject to reduction to achieve
> proportionality with damages award). The Supreme Court, this Court, and district
> courts in this Circuit have long recognized the significance of attorneys' fees in
> civil rights cases and have not hesitated to award or approve disproportionate fees
> to counsel. See, e.g., *City of Riverside*, 477 U.S. at 564-67 (upholding award of
> $245,456.25 in fees, even though plaintiffs recovered only $33,350); *Barbour v.
> City of White Plains*, 700 F.3d 631, 634-35 (2d Cir. 2012) (per curiam) (affirming
> award of $290,997.94 in fees and costs, even though plaintiffs recovered only
> $30,000); *Hui Luo v. L & S Acupuncture, P.C.*, 649 F. App'x 1, 3 (2d Cir. 2016)
> (summary order) (affirming award of $64,038 in fees and $4,830.67 in costs, even
> though plaintiff recovered only $4,130.75); *Gonzalez v. Scalinatella, Inc.*, 112 F.
> Supp. 3d 5, 9 (S.D.N.Y. 2015) (awarding $48,366.50 in attorneys' fees and
> $1,150.60 in costs, even though plaintiff recovered only $7,500); *Grochowski v.
> Ajet Constr. Corp.*, No. 97-cv-6269 (NRB), 2002 U.S. Dist. Lexis 5031, 2002 WL

465272, at *1 (S.D.N.Y. Mar. 27, 2002) (awarding $97,207.50 in attorneys' fees, even though plaintiffs recovered only $26,000); *Samborski v. Linear Abatement Corp.*, No. 96-cv-1405 (DC), 1999 U.S. Dist. Lexis 14571, 1999 WL 739543, at *4 (S.D.N.Y. Sept. 22, 1999) (awarding $110,000 in attorneys' fees and $7,437.59 in costs, even though plaintiffs recovered only $50,000).

948 F.3d at 604-605.

### Point III

### Plaintiffs' claims are based on a common core of facts and related theories

Where the plaintiff has prevailed on some but not all of his or her claims, the Court looks to whether the claims "involve a common core of facts" or are "based on related legal theories." *Casmento v Volmar Constr., Inc.*, 2022 US Dist. Lexis 225520, at *8-9 (SDNY Dec. 14, 2022) (citing *Wilson v. Nomura Sec. Int'l, Inc.*, 361 F.3d 86, 90 (2d Cir. 2004)). Where the claims involve a common core of facts or are based on related legal theories, the court focuses "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Casmento v. Volmar Constr., Inc.*, 2022 US Dist. Lexis 225520, at *8-9 (SDNY Dec. 14, 2022) (citing *Wilson*, *supra*). In that instance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Casmento*, *supra* (citing *Wilson*, *supra*).

No fees should be awarded for time spent pursuing a failed claim if it was "unrelated" to the plaintiff's successful claims in the sense that it was based on different facts and legal theories. *Casmento v Volmar Constr., Inc.*, *supra*, 2022 US Dist. Lexis 225520, at *8-9 (SDNY Dec. 14, 2022) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998)).

The core allegations of this lawsuit stem from Dula's racial slurs and discriminatory treatment which the jury determined subjected Plaintiffs to inferior terms, conditions or

6

privileges of employment. See trial transcript, pg. 530 (NYSHRL jury instruction) and Lucas

Decl. Ex. 1 (Judgment).

The claims on which Plaintiffs did not succeed were related to and inextricably

intertwined with the NYSHRL claim that Dula's racial epithets and discriminatory treatment

subjected Plaintiffs to inferior terms, conditions or privileges of employment. Instructive in this

regard is *Fernandez v N. Shore Orthopedic Surgery & Sports Medicine, P.C.*, 2000 U.S. Dist.

Lexis 5285 (E.D.N.Y. Feb. 4, 2000):

> the Court finds plaintiff's unsuccessful claims for which he sought relief share a common
> core of facts with the two retaliation claims in which he prevailed. Plaintiff's claims as to
> discrimination, retaliation and equal pay are derived from a common set of facts alleging
> defendant discriminated by some action against plaintiff, for example, singling out
> plaintiff for unfavorable treatment and termination. The common facts underlying
> plaintiff's claims makes severing the billable hours expended on each claim difficult. The
> Court's finding that all plaintiff's claims are intertwined and are not severable is well
> supported by Second Circuit precedent. *See Dominic v. Consolidated Edison Co.*, 822
> F.2d 1249, 1260 (2d Cir. 1987) (finding federal retaliation and discrimination claims
> closely related because they share a common core of facts and similar legal
> theories); *Reed v. A. W. Lawrence & Co.*, 95 F.3d 1170, 1177 (2d Cir. 1996) (finding
> New York State discrimination claims share a common core of facts and similar legal
> theories with the federal discrimination claims); *Choudhury v. Polytechnic Inst.*, 735 F.2d
> 38, 44 (2d Cir. 1984) (finding section 1981 claims closely related to those based on Title
> VII as both are premised on discrimination).

2000 U.S. Dist. Lexis 5285, at *23-24; see also *Hines v City of Albany*, 613 F App'x 52, 55 (2d

Cir 2015) ("Primarily, Defendants contend that the district court erred in failing to reduce

Plaintiffs' fees to account for their partial success, and thus exclude time spent on unsuccessful

claims. However, we have held that where 'the plaintiff's claims involve a common core of facts

or are based on related legal theories, and are therefore not severable, attorney's fees may be

awarded for unsuccessful claims as well as successful ones.'") (citation omitted).

This reasoning also holds true holds true for time spent in connection with the claims

against co-defendant Snow, who was never alleged to have used racial slurs and who was not

found liable.  Given his formal designation as Plaintiffs' principal employer (i.e., "Employer 1",
see Lucas Decl. Ex. 4), Snow was presumably a "necessary party." See, e.g., *Escamilla v Mosher
Steel Co.*, 386 F Supp 101, 105 (S.D. Tex. 1975) ("Since Trinity is the parent corporation and
sole owner of Mosher Steel, its joinder in this action would appear necessary so that complete
relief may be accorded among the parties"). Snow being named as a co-defendant was thus akin
to an employer with no anti-discrimination policy in place or *Farragher-Ellerth* defense asserted
being named as a defendant based on the misconduct of one of its managers (in this analogy with
Dula, formally designated as "Employer 2" [Lucas Decl. Ex. 4], the manager and proverbial bad
actor). See *Perry v Ethan Allen, Inc.*, 115 F3d 143, 153 (2d Cir 1997).

While it would have been easier if Plaintiffs were not put in the position of having to
present evidence tending to show that Dula was abusive and neglectful and thus not genuinely
concerned that Plaintiffs were mistreating her children, such evidence and testimony was
necessitated by Defendants' assertions to the effect that Plaintiffs were abusive or neglectful
caregivers—a subject discussed during the pretrial conference when addressing Defendants'
objections to PX-9 (the pictures of Defendants' third child in the basement overnight as per
Dula's orders). See, e.g., Dkt. 29, Pretrial Order at pg. 32 (Defendants' assertion that
"Defendants later confirmed a host of alarming conduct, including the use by Ms. Foster of a
scary Joker Mask to frighten their small children; her threats to use 'Black Magic' on Ms. Dula;
Ms. Foster's penchant for running the bath tub water for the children's bath at an extremely hot
temperature; and Plaintiffs' use of a small windowless service closet (which led to the fire
escape), located at the Manhattan apartment, to discipline their children by forcing the crying
child to endure a 'timeout' in a dangerous and frightening enclosure.").[2]

---

[2] Plaintiffs request that the Court take judicial notice of its own docket.

**Point IV**

**To simplify the Court's work in connection with
Plaintiffs' fee application, the requested fees have been
significantly reduced to account for time spent on certain matters,
and, which further reductions are unwarranted,
a substantial further reduction of fees is consented to as discussed below**

"The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." *Sullivan v Aircraft Servs. Group, Inc.*, 2023 U.S. Dist. Lexis 155603, at *3 (E.D.N.Y. Sept. 1, 2023) (citations omitted). To err on the side of caution and simplify the Court's work, Plaintiffs' fee request is based on much less than the lodestar amount.

Although Snow was likely a necessary party (see *Escamilla v Mosher Steel Co.*, *supra*)), the time spent in preparing for and conducting Snow's deposition specifically (as opposed to Dula's deposition or matters common to both Defendants' depositions) has been excluded from this fee application.

Additionally, any time spent on the initially planned expert testimony regarding stereotyping, which was later abandoned following the Court's guidance, is excluded from our fee request. (It goes without saying that time associated with the Plaintiffs' separate state court wage and hour case is also excluded.) Also excluded from this fee application is the time spent on this matter by Scott A. Lucas's former associate, Andrew Sack, and all time spent by Lucas's co-counsel Steven M. Sack (well over 100 hours) (with Steven M. Sack to be paid by Lucas from whatever fee is awarded for a portion of Lucas's time). Also excluded is any time spent preparing this fee application.

Beyond these various categorical exclusions, we have applied a blanket 25% reduction to the remaining billable hours (from 409 hours to 306.8 hours).

This supplemental 25% reduction considers, among other things, the time spent addressing issues with Defendant Snow, including the unsuccessful attempts to recover some of the difference in Plaintiffs' pre- and post-pay cut wages. This supplemental 25% across-the-board reduction is more than sufficient to account for any time potentially attributable to Snow because most of the issues in the case involved interactions with Defendant Dula.

To facilitate a smooth and unopposed resolution of this fee application, Plaintiffs are willing to conditionally increase the above-referenced supplemental across-the-board reduction of the remaining time not already categorically excluded (and it must be emphasized that hundreds of hours of time have been categorically excluded before applying any percentage-based exclusion of the remaining time) from 25% to 67% (i.e., from 306.8 hours [down originally from 409 hours, after having already applied substantial categorical exclusions] to 135 hours).

To avoid a "no good deed goes unpunished" scenario, the proposed increase in the exclusion of compensable time, from 25% to 67% of all time not already categorically excluded, is predicated on the condition that Dula not contest the adjusted billable hours and proposed hourly rate (see below). The hourly rate in question is $590, which represents the lowest counsel's previously approved hourly rates after adjusting for inflation and other pertinent factors in a conservative manner. Following the application of both the significant categorical exclusions and the 67% reduction of all of Lucas's remaining time, the total billable hours amount to 135 at the rate of $590 per hour, or $79,650. This arrangement is contingent on Dula's

10

acceptance of both this vastly reduced number of billable hours and the proposed hourly rate as final.

For the sake of clarity, Plaintiffs believe an additional reduction offered beyond 25% of Lucas's time spent after applying the substantial categorical exclusions is wholly unwarranted. Nonetheless, Plaintiffs are conditionally willing to accept a further reduction of Lucas's time spent (after having already applied the substantial categorical exclusions) from 25% to 67% not as an admission of any need for such further reduction, but *solely* to obviate any and all possible objections to the fee application and expedite the Court's approval process.

## Point V

## Plaintiffs' Fee Request Should Be Granted

"The district court retains discretion to determine ... what constitutes a reasonable fee." *G and P Warehouse, Inc. v. Cho's Church Ave Fruit Market Inc.*, 2016 WL 5802747, at *9 (E.D.N.Y. 2016), quoting *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

"To determine the lodestar amount, a court must determine 'the number of hours reasonably expended on the litigation' and multiply that number 'by a reasonable hourly rate.'" *G and P Warehouse, Inc.*, *supra*, 2016 WL 5802747, at *9, quoting *Moore v. Diversified Collection Servs., Inc.*, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), *report & recommendation adopted by* 2013 WL 1622713 (April 15, 2013).

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 187 (2d Cir. 2008), the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases[.]

*Id.* at 187 n.3 (citation omitted).

Plaintiffs' counsel has submitted verbatim extractions of Scott A. Lucas's contemporaneous billing records, setting forth the dates, descriptions, and amount of time spent by Lucas in this matter.  Lucas generally bills paying clients at $675 per hour (*see* accompanying Declaration of Scott A. Lucas dated Nov. 20, 2023 ["Lucas Decl."] ¶ 3).

Based on Lucas's contemporaneous billing records, Lucas has incurred not less than 409 hours of time to date not otherwise categorically excluded. *See* Lucas Decl. Ex. "2" (true excerpts of true contemporaneous timekeeping records for Lucas). Lucas has been litigating employment law cases for 28½ years, four years as an associate of the Law Offices of Michael G. Berger, and 24½ years as the principal of the Law Offices of Lucas, an employment law firm.

As to qualifications, Lucas:

- won the State's largest employment verdict in 2015 (a $6.181 million pregnancy discrimination verdict), *see New York Law Journal, 2015 Top Verdicts of New York, at page 26*; *See also Santana v. G.E.B. Medical Management*, 2017 WL 4927181, 5 (N.Y. Sup. 2017) (leaving intact slightly more than half of that verdict, and awarding approximately $800,000 in attorney's fees);[3]

- successfully litigated and argued the leading case under New York's tip appropriation law, together with Steven M. Sack, *Samiento v. World Yacht, Inc.*, 10 N.Y.3d 70 (2008), a landmark hospitality industry case that helped put an end the widespread practice of New York restaurants and

---

[3] *See also* http://www.nycbar.org/media-listing/media/detail/new-york-city-bar-legal-referral-service-panel-members-win-dollar62-million-verdict-in-pregnancy-discrimination-lawsuit

banquet operators adding an 18% or 20% "service charge" to the bill and then keeping it instead of distributing it to the waitstaff.  *See generally* http://www.nycbar.org/media-listing/media/detail/legal-referral-service-lawyers-obtain-ground-breaking-decision-for-wait-staff-in-tipping-case;

- won one of the highest abuse of process verdicts in New York history ($2.6 million, together with a finding that punitive damages would be assessed at a later date, in *Brown v. Suggs*, index no. 605492-00 (N.Y. Sup. 2007)) on behalf of a commission salesperson falsely accused of misconduct, in a case discussed in the New York Times and New York Magazine);

- has published articles analyzing New York's wage payment law, Labor Law Article 6:

  - "*Does New York's Wage Payment Law Have a Gaping Loophole?*", Labor and Employment Law Journal, Vol. 41 No. 1 (Fall 2016, New York State Bar Association) (cited with approval in the legislative history to the "No Wage Theft Loophole Act",[4] which became law in 2021).

  - "*Labor Law Article 6: A Misunderstood Law That Fully Protects All Employees Wages*," 101 Albany Law Review 80.4 (2017);

  - "*Is There a Difference Between 'Deducting' and 'Failing to Pay' Wages?*", New York Law Journal (Nov. 14, 2018).

When comparing a current fee request to past fee awards, one must factor in the effects of inflation to ensure an "apples to apples" comparison. See *Johnson v City of NY*, 2023 U.S. Dist. Lexis 22582, at *30, n. 9 (E.D.N.Y. Feb. 8, 2023). In *Santana v. G.E.B. Medical Management*, 2017 WL 4927181, 5 (N.Y. Sup. 2017), Lucas was approved at the hourly rate for a trial that concluded in September 2015 of $450, or $582 adjusted for inflation (https://www.bls.gov/data/inflation_calculator.htm). The *Santana* Court's conclusion was buttressed by the affirmations/affidavits filed in that case, which this Court can and should take

---

[4] 2021 Legis. Bill Hist. NY S.B. 858.

judicial notice of, *Phillips v. Executor of Estate of Arnold*, 2013 WL 4458790, at *3 (W.D.Wash. 2013) (federal courts may take judicial notice of state court filings), which are attached as Lucas Decl. collective Ex. "2." These Affirmations/ Affidavits show that the rate of $450-$500 per hour for an attorney with Mr. Lucas's experience was reasonable when the fee petition in *Santana* was submitted 8 years ago. While it might be argued that the result achieved in *Santana* was much better than in this case (which is true), that does not militate in favor of a lower hourly fee because (A) *Santana* included diagnostically proven PTSD injuries, making those claims inherently more valuable from the start, whereas the Plaintiffs in this case received no mental health treatment and had no claim for post-termination back pay or front pay; and (B) the *Santana* case involved over 800 hours of compensated time, whereas most of the hours expended in this case have been excluded (categorically and otherwise) to account for, *inter alia*, the far more modest success achieved in this case.

And if one conservatively assumes only an additional $7.50 per hour per year or $60 cumulatively in value for eight years (from September 2015 to October 2023), the hourly figure goes from $582 to $642.

In *Demirovic v Ortega*, 2018 U.S. Dist. Lexis 68790, at *29 (E.D.N.Y. Apr. 24, 2018), a wage and hour case, Lucas was approved by the Eastern District of New York at the hourly rate for a trial that concluded in October 2017 of $450, or $561 adjusted for inflation (https://www.bls.gov/data/inflation_calculator.htm), and from $561 per hour to $586 per hour if one conservatively assumes only an additional $25-per-hour adjustment because "Eastern District hourly rates typically are lower than Southern District hourly rates" (*U.S.A. Famous Original Ray's Licensing Corp. v Tisi's Pizza & Pasta, Inc.*, 2009 U.S. Dist. Lexis 111141, at *23, n. 9 (S.D.N.Y. Dec. 1, 2009)), and from $586 per hour to $631 per hour if one

conservatively assumes only an additional $7.50 per hour per year or $45 cumulatively in value

for six years (from October 2017 to October 2023) based on counsel's additional experience

gained over time.

      Although in another case, *Chopen v. Olive Vine, Inc.*, 2015 WL 1514390, at *15

(E.D.N.Y. 2015), Lucas was approved at the hourly rate (for a case it was recommended in

August 2013 that a default judgment be entered) of only $350, or only $460 adjusted for inflation

from August 2013 to October 2023 (https://www.bls.gov/data/inflation_calculator.htm), the

hourly rate requested here is no more than the hourly rate awarded in *Chopen* when additional

years of experience and other salient factors (including inflation) are considered.

      The inflation-adjusted $460 per hour figure in *Chopen* goes to $490 per hour if one

conservatively assumes only a $30-per-hour differential for the fact that *Chopen* involved a

default judgment rather than a trial on the merits (see *Xochimitl v Pita Grill of Hell's Kitchen,

Inc.*, 2016 U.S. Dist. Lexis 121259, at *62 (S.D.N.Y. Sep. 8, 2016) (finding it appropriate to

award attorney's fees at lower rates in cases that were relatively simple due to the

Defendants' default)); and from $490 per hour to $515 per hour if one conservatively assumes

only an additional $25-per-hour adjustment because "Eastern District hourly rates typically are

lower than Southern District hourly rates" (*U.S.A. Famous Original Ray's Licensing Corp. v

Tisi's Pizza & Pasta, Inc.*, *supra*); and from $515 per hour to $590 per hour if one conservatively

assumes only an additional $7.50 per hour per year or $75 cumulatively over the course of ten

years (from August 2013 to October 2023) based on the value of counsel's increased experience

level over time.

      Moreover, the fee application in *Chopen*: (A) did not include supporting affidavits from

other employment law practitioners to justify the fee sought; (B) was decided before Lucas

obtained the highest employment verdict for any New York State or federal employment case in 2015; (C) was decided before Lucas had any scholarly articles published; and (D) was decided before Lucas was approved at the higher rates in *Santana* and *Demirovic*, *supra*.

Although the average of the above fee awards after adjusting for inflation and conservatively adjusting for other salient factors is $621 ($642 + $631 + $590 / 3), counsel has chosen to seek the hourly fee (for substantially written down hours) based on the lowest of those three figures, i.e., <u>$590</u> per hour.

**The *Arbor Hill* Factors**

**(1)** **The time and labor expended:** As to the first *Arbor Hill* factor, the time and labor for which recovery is sought has been greatly reduced, as discussed above. Accordingly, this *Arbor Hill* factor militates in favor of the requested fee.

**(2)** **The novelty and difficulty of the questions:** As to the second *Arbor Hill* factor, this was not a straightforward wage and hour case or a dispute occurring in the context of an ordinary workplace with familiar workplace standards, procedures, and comparators. Instead, it was a messy, stressful and ugly conflict that unfolded in Defendants' homes and that involved Defendants' young children, and that was complicated by, *inter alia*, Defendants' inappropriate efforts to paint Plaintiffs as abusive or neglectful caregivers—a tactic which, by extension, put Plaintiffs in the position of having to present evidence tending to show that Dula's claims about Plaintiffs being abusive and neglectful caregivers were not actuated by any genuine concern about the children's well-being—a subject discussed during the pretrial conference when addressing Defendants' objections to PX-9 (the pictures of Defendants' third child in the basement overnight as per Dula's orders), see, e.g., Dkt. 29 (Pretrial Order at pg. 32). Another

16

complicating factor was Defendants' efforts throughout the case to conflate the issue of whether Dula (who testified to being unaware of what Plaintiffs were paid until after Plaintiffs' pay was cut) discriminated against Plaintiffs with the (non-)issue of whether *Snow* paid Plaintiffs well. This *Arbor Hill* factor militates in favor of the requested fee.

(3)     **The level of skill required to perform the legal service properly:**  As to the third *Arbor Hill* factor, it takes a fair amount of skill to effectively go up against wealthy and determined Defendants with the highest caliber legal representation in a discrimination case not involving a familiar workplace setting with familiar workplace standards, procedures, and comparators, but a dispute that unfolded in Defendants' homes that was messy, stressful and ugly. It takes a fair amount of strategic wisdom to avoid triggering dispositive motions in a discrimination case and move the case—which, as discussed above, was never a high-value case if one excludes the possibility of punitive damages—through discovery, motions *in limine*, trial by jury, and post-trial motions.  This *Arbor Hill* factor militates in favor of the requested fee.

(4)     **The preclusion of employment by the attorney due to acceptance of the case:** As to the fourth *Arbor Hill* factor, there is a huge opportunity cost in accepting a discrimination case like this against determined adversaries with vast resources. Although intentional race and color discrimination is a profound evil and Plaintiffs feel vindicated by the jury's verdict, it was never a particularly wise *business* decision for counsel to accept this case, as it was never a high-value case if one excludes the possibility of punitive damages because Plaintiffs were promptly re-employed after being fired and never sought mental health treatment. If fee awards for such cases are not sufficiently high, then experienced practitioners will have little choice but to stop representing victims of employment discrimination except in cases where there is ample backpay and front pay damages and officially diagnosed mental health injuries, especially if the

possibility of a punitive damages award is taken off the table.  Finally, given the vastly reduced scope of the fee actually being requested, acceptance of this case by counsel for the "prevailing parties" (Plaintiffs) will prove to have been very unwise from a *business* standpoint *even if* the voluntarily reduced fee request is granted.  Accordingly, this *Arbor Hill* factor militates in favor of the requested fee.

(5)     **The attorney's customary hourly rate:**  The fifth *Arbor Hill* factor also militates in favor of the requested fee because Lucas generally charges paying clients (excepting those who demonstrate financial need) $675 per hour.  *See* Lucas Decl. ¶ 3. Accordingly, this *Arbor Hill* factor militates in favor of the requested fee.

(6)     **Whether the fee is fixed or contingent:**  As to the seventh *Arbor Hill* factor, the fee in Plaintiffs' retainer agreement is contingent (32% of any recovery).  Lucas Decl. ¶ 3. However, the Second Circuit has clarified that it would be improper to compute Plaintiffs' attorney's fees as a percentage of the amount awarded at trial in civil rights cases. *Millea v Metro-North R.R.*, 658 F3d 154 (2d Cir 2011). Accordingly, it is respectfully submitted that this *Arbor Hill* factor is neutral.

(7)     **The time limitations imposed by the client or the circumstances:**  Preparing for and conducting a hard-fought employment discrimination jury trial in a case involving young children that was messy, stressful and ugly imposes difficult substantial time constraints. Accordingly, this *Arbor Hill* factor also militates in favor of the requested fee.

(8)     **The amount involved in the case and the results obtained:**  As noted, while the scope of Plaintiffs' victory was quite modest from a monetary standpoint, Plaintiffs feel vindicated, and the Second Circuit has clarified that it would be improper to compute Plaintiffs' attorney's fees as a percentage of the amount awarded at trial in civil rights cases. *Millea v*

*Metro-North R.R.*, 658 F3d 154 (2d Cir 2011). This *Arbor Hill* factor might militate against this fee application if all of the time incurred in this matter was included in the fee request, but most of the time incurred in this matter has been conditionally excluded from this fee request. This factor, together with the Second Circuit's clarification in *Millea*, would make it inappropriate or at least unnecessary to count this *Arbor Hill* factor against Plaintiffs.

(9)     **The experience, reputation, and ability of the attorneys:**  This *Arbor Hill* factor also militates in favor of the requested fee for the reasons discussed above.

(10)     **The "undesirability" of the case:**  This *Arbor Hill* factor also militates in favor of the requested fee because (a) the case never involved post-termination backpay or front pay or officially diagnosed mental health injuries; (b) the case was filed against wealthy and determined Defendants with the highest caliber legal representation; and (c) this was not a discrimination case involving a familiar workplace setting with familiar workplace standards, procedures, and comparators, but rather a messy, stressful and ugly conflict based on events that unfolded in Defendants' homes and that involved young children.

(11)     **The nature and length of the professional relationship with the client:** Plaintiffs' counsel in this matter is also representing Plaintiffs in a state court wage and hour matter under an attorney-client relationship that began at the same time that the instant attorney-client relationship began.  This *Arbor Hill* factor appears to be neutral.

(12)     **Awards in similar cases:**  This *Arbor Hill* factor also militates in favor of the requested fee, as discrimination cases are typically more difficult than a straightforward wage and hour case, and this was not a discrimination case involving a familiar workplace setting with familiar workplace standards, procedures, and comparators.

19

***Certain Costs Should Also Be Awarded***

Plaintiffs also request costs totaling $2,766.15, consisting of the cost (after subtracting the $388.50 "rush" fee) of Dula's deposition which was used at trial ($2,366.15, Lucas Decl. Ex. 6 (invoice) (*Natural Organics, Inc. v. Nutraceutical Corp.*, 2009 WL 2424188, at *4-5 (S.D.N.Y. Aug. 6, 2006) (awarding the costs of deposition and trial transcripts where they were used at trial or reasonably necessary to the litigation at the time they were taken)), and the filing fee ($400). To err on the side of caution, the cost of Snow's deposition transcript has been excluded from the request for reimbursement of costs. So too has the cost of daily trial transcripts, and document reproduction and mailing costs.

**Conclusion**

WHEREFORE, it is respectfully requested that Dula be ordered to pay attorney's fees for

306.8 hours of Lucas's time at the hourly rate of $590 *unless* Dula does not oppose an attorney's

fee award for 135 hours of Lucas's time at the hourly rate of $590. If Dula does not oppose a fee

award for 135 hours of Lucas's time at the hourly rate of $590, then it is respectfully requested

that Dula be ordered to pay this lower fee award instead. It is also respectfully requested that any

award of fees be accompanied by an award of $2,766.15 in costs, together with plus post-

judgment interest.

Dated: New York, New York
　　　 November 20, 2021

　　　　　　　　　　Law Offices of Scott A. Lucas

　　　　　　　　　　By:　　*/S/ Scott A. Lucas*
　　　　　　　　　　　　　 Scott A. Lucas
　　　　　　　　　　　　　 600 Mamaroneck Avenue
　　　　　　　　　　　　　 Suite 400
　　　　　　　　　　　　　 Harrison, New York 10528
　　　　　　　　　　　　　 (646) 342-1139 (direct)
　　　　　　　　　　　　　 (646) 632-3737 (office)
　　　　　　　　　　　　　 scott@lucasemploymentlaw.com
　　　　　　　　　　　　　 *Attorneys for Plaintiffs Cordia Foster and Cislyn Wright*