UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
CORDIA FOSTER and CISLYN VERONA
WRIGHT,                                                         21-cv-11224 (CM)(DF)

                              Plaintiffs,

            - against -

ELYSE DULA a/k/a ELYSE SNOW
and IAN K. SNOW,

                              Defendants.
------------------------------------------------------------------------x

**DEFENDANT ELYSE DULA'S  MEMORANDUM OF LAW IN SUPPORT OF
MOTION PURSUANT TO RULES 59 AND 50(b) OF THE
<u>FEDERAL RULES OF CIVIL PROCEDURE</u>**

Gerard A. Riso
Mantel McDonough Riso, LLP
410 Park Avenue, Suite 1720
New York, New York  10022
212-599-1515
Gerard.Riso@MMRLLP.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii-v

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................2

POINT I -  A NEW TRIAL SHOULD BE GRANTED
            PURSUANT TO RULE 59 ...............................................................................2

A.  Introduction ...........................................................................................................2

B.  The Verdict Finding Dula Liable For Racial Discrimination Under The NYSHRL
    Is Inconsistent With The Verdict Finding Dula Not Liable For Racial
    Discrimination Under Section 1981.........................................................................3

    1.  Racial Discrimination Under The NYSHRL  ......................................................4

    2.  The Court's Charge With Respect To The Racial Discrimination
        Claim Under Section 1981 and The NYSHRL  ................................................4

    3.  The Lower Standard Under the NYSHRL Does Not Provide A Basis
        To Reconcile The Jury's Verdict  ......................................................................5

C.  The Verdict Finding Dula Liable For Racial Discrimination Under The NYSHRL
    Is Inconsistent With The Verdict Finding Dula Not Liable For Retaliation Under
    Both the NYSHRL and Section 1981 ......................................................................8

    1.  Retaliation Under The NYSHRL  .....................................................................9

    2.  The Court's Charge With Respect To Retaliation Under
        Section 1981 and The NYSHRL  ......................................................................9

    3.  The Verdict Finding Dula Liable For Racial Discrimination Under
        The NYSHRL Cannot Be Reconciled With The Verdicts Finding
        Dula Not Liable For Retaliation Under Both The NYSHRL and
        Section 1981......................................................................................................10

D.  The Jury Verdict Finding Dula Liable For Racial Discrimination Under The
    NYSHRL Is Against The Weight of the Evidence ..................................................12

E.  In The Event This Court Grants Relief Under Rule 59, The Court Should
    Decline To Exercise Supplemental Jurisdiction Over the Remaining
    NYSHRL Claim........................................................................................................18

POINT II -   JUDGMENT SHOULD BE ENTERED IN
             DEFENDANT DULA'S FAVOR PURSUANT
             TO RULE 50(b) ...............................................................................................20

CONCLUSION  ...............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Banks v. GM, LLC*,
  81 F.4th 242, 262 (2d Cir. 2023) ................................................................. 7

*Brooks v. Brattleboro Mem'l Hosp.*,
  958 F.2d 525, 529 (2d Cir. 1992) ................................................................. 3

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53, 126 S. Ct. 2405 (2006) ........................................................... 7

*Campodonico v. Wal-Mart Stores E., LP*,
  2023 U.S. Dist. LEXIS 175918, *20 (S.D.N.Y. 2023) ........................... 21

*Carnegie-Mellon University v. Cohill*,
  484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) .................... 19

*Cross v. N.Y. City Transit Auth.*,
  417 F.3d 241, 248 (2d Cir. 2005) ............................................................... 21

*Densberger v. United Techs. Corp.*,
  125 F. Supp. 2d 585, 598 (D. Conn. 2000), *aff'd*, 297 F.3d 66 (2d Cir. 2002) .......................... 2

*DLC Mgmt. Corp. v. Town of Hyde Park*,
  163 F.3d 124, 133 (2d Cir. 1998) ................................................................. 3

*Harris v. Niagara Mohawk Power Corp.*,
  252 F.3d 592, 598 (2d Cir. 2001) ................................................................. 3

*Hill v. Rayboy-Brauestein*,
  467 F. Supp.2d 336, 360 (S.D.N.Y. 2006) .................................................. 7

*Kinneary v. City of N.Y.*,
  601 F.3d 151, 155 (2d Cir. 2010) ............................................................... 21

*Kolari v. New York Presbyterian Hospital*,
  455 F.3d 118, 122 (2d Cir. 2006) ............................................................... 19

*Kosmynka v. Polaris Indus.*,
  462 F.3d 74, 86 (2d Cir. 2006) ..................................................................... 3

*Lavoie v. Pac. Press & Shear Co.*,
  975 F.2d 48, 53 (2d Cir. 1992) ..................................................................... 2

*Lindsey v. Butler*,
   647 F.Supp.3d 128, 137 (S.D.N.Y. 2022)............................................................................ 3

*Manley v. AmBase Corp.*,
   337 F.3d 237, 245 (2d Cir. 2003)...................................................................................... 3

*McCardle v. Haddad*,
   131 F.3d 43, 50-51 (2d Cir. 1997)................................................................................... 20

*Metromedia Co. v. Fugazy*,
   983 F.2d 350, 363 (2d Cir. 1992)...................................................................................... 2

*Okeke v. N.Y. & Presbyterian Hosp.*,
   275 F. Supp. 3d 470, 484 (S.D.N.Y. 2017)...................................................................... 13

*Oneida Indian Nation v. Madison County*,
   665 F.3d 408, 437 (2d Cir. 2011)..................................................................................... 18

*Pierce v. City of N.Y.*,
   805 Fed. Appx. 70, 71, 2020 U.S. App. LEXIS 16125, **3 (2d Cir. 2020)..................... 13

*Richardson v. New York State Dep't of Correctional Serv.*,
   180 F.3d 426, 439 (2d Cir. 1999)...................................................................................... 7

*Saleh v. Pretty Girl*,
   2022 U.S. Dist. LEXIS 160952 at *20 (E.D.N.Y. 2022) ............................................... 21

*Stephenson v. Doe*,
   332 F.3d 68 (2d. Cir. 2003)............................................................................................... 3

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
   938 F.3d 43, 54, 2019 U.S. App. Lexis 27358, **15 - 16 (2d Cir. 2019)......................... 21

*U.S. v. Beridze*,
   415 Fed. Appx. 320, 328, 2011 U.S. App. LEXIS 5984, **13 - 14 (2d Cir. 2011)................. 16

*Valencia ex rel. Franco v. Lee*,
   316 F.3d 299, 305 (2d Cir. 2003)..................................................................................... 19

*Walsh v. City of New York*,
   742 Fed. Appx. 557, 561, 2018 U.S. App. LEXIS 21519, **4 -5 (2d Cir. 2018)..................... 21

*Wheeler v. Praxair Surface Techs., Inc.*,
   2023 U.S. Dist. LEXIS 171430, *31, 2023 WL 6282903 (S.D.N.Y. 2023) ............................ 20

*Yost v. Everyrealm, Inc.*,
  2023 U.S. Dist. LEXIS 31246, *31, 2023 WL 2224450 (S.D.N.Y. 2023) .............................. 20

**Statutes**

28 U.S.C. § 1367(c) ............................................................................................ 20, 21

42 U.S.C. § 1981 ............................................................................................... passim

NYSHRL ........................................................................................................... passim

NYSHRL § 296(1) ..................................................................................................... 5

NYSHRL § 296(1)(h) ............................................................................................... 10

NYSHRL § 296(7) .................................................................................................... 10

**<u>Rules</u>**

FRCP 50(a) ........................................................................................................... 2, 20

FRCP 50(b) .............................................................................................. 1, 2, 20, 22

FRCP 59 .................................................................................................. 1, 2, 18, 22

Defendant Elyse Dula respectfully submits this Memorandum of Law in support of her motion for post-trial relief pursuant to Rules 59 and 50(b) of the Federal Rules of Civil Procedure.

## **Preliminary Statement**

The Jury found Dula not liable to Plaintiffs Cordia Foster and Cislyn Wright under 42 U.S.C. § 1981 for racial discrimination or harassment in the workplace, and not liable for racial retaliation under both Section 1981 and the New York State Human Rights Law (NYSHRL).  The Jury, however, found Dula liable for racial discrimination under the NYSHRL.  The Jury awarded compensatory damages of $8,800 to each Plaintiff.[1]

As shown below, the verdict finding Dula liable for racial discrimination under the NYSHRL, but  not liable for racial discrimination under Section 1981 *and* not liable for retaliation under both the NYSHRL and Section 1981, is fatally inconsistent.

By finding no racial discrimination under Section 1981, the Jury necessarily found that Plaintiffs did not prove that either of the two racial epithets allegedly uttered by Dula had occurred. Without establishing that those alleged racial epithets were made by Dula, there was no evidence upon which to find that Dula harbored any racial animus or *intentionally* discriminated or harassed Plaintiffs *because* of their race.  Moreover, by finding no retaliation, the Jury necessarily found that Dula had a *legitimate non-pretextual purpose or reason* for each of the alleged retaliatory acts complained of; therefore, any such acts cannot constitute intentional acts of racial discrimination or harassment.

To the extent that this Court may conclude that the Jury may have found that one or both of the alleged racial epithets had been made by Dula, yet were not severe or pervasive enough to

---

[1] Defendant Ian Snow was found not liable on all counts.  Judgment was filed on November 8, 2023.  (Doc. No. 68.)

1

constitute a violation of Section 1981, but were nonetheless sufficient to subject Plaintiffs to inferior terms, conditions or privileges of employment under the NYSHRL, the verdict of liability is against the weight of the credible evidence and should be set aside for this reason.

As such, pursuant to Rule 59, the verdict finding Dula liable for racial discrimination under the NYSHRL should be vacated and a new trial ordered on that claim.[2]

Dula is also entitled to judgment as a matter of law under Rule 50(b), as there is a complete absence of evidence to support the verdict of liability against Dula under the NYSHRL.[3]

## ARGUMENT

## POINT I

## A NEW TRIAL SHOULD BE GRANTED PURSUANT TO RULE 59

### A.  Introduction

Rule 59(a) provides that a new trial may be ordered "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."

The decision to grant a new trial is within the court's sound discretion.  *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992).

 "A Rule 59(a) motion for a new trial is . . . an appropriate vehicle for a [party] to challenge a jury verdict on the ground that it is inconsistent."  *Densberger v. United Techs. Corp.*, 125 F. Supp. 2d 585, 598 (D. Conn. 2000), *aff'd*, 297 F.3d 66 (2d Cir. 2002).  *See Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 53 (2d Cir. 1992) ("When verdicts are not capable of reconciliation and resubmission of the determinations for reconsideration or clarification is not possible because the

---

[2] As addressed below (Point I(E)), because only a state law claim would then remain, upon granting relief under Rule 59, this Court should decline to exercise supplemental jurisdiction and dismiss the remaining NYSHRL claim without prejudice to refiling in state court.

[3] The salient facts, adduced during the trial, are addressed in the legal points.

jury has been discharged, a new trial may be – but is not always – required.")

A verdict is inconsistent if a jury's finding on one claim necessarily negates an element of another cause of action.  *See Kosmynka v. Polaris Indus.*, 462 F.3d 74, 86 (2d Cir. 2006).

When evaluating whether there is an inconsistency, a court "must adopt a view of the case, if there is one, that resolves any seeming inconsistency." *Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 598 (2d Cir. 2001), *quoting*, *Brooks v. Brattleboro Mem'l Hosp.*, 958 F.2d 525, 529 (2d Cir. 1992).

"If, however, the findings of a jury cannot consistently be resolved, a new trial may be appropriate." *Lindsey v. Butler*, 647 F.Supp.3d 128, 137 (S.D.N.Y. 2022); *see Stephenson v. Doe*, 332 F.3d 68, 79 (2d. Cir. 2003) ("If we are unable to harmonize the jury's findings, we must vacate the judgment and order a new trial.")

Also, "[a] new trial may be granted . . . when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park¸* 163 F.3d 124, 133 (2d Cir. 1998).  *See Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003).  The Court "need not view the evidence in the light most favorable to the verdict winner", although a motion for a new trial should not be granted unless the trial court is convinced that "the jury reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Id.* at 244-45.

**B.    The Verdict Finding Dula Liable For Racial Discrimination Under The NYSHRL Is Inconsistent With The Verdict Finding Dula Not Liable For Racial Discrimination Under Section 1981**

The verdict finding Dula liable for racial discrimination or harassment under the NYSHRL, but not liable for racial discrimination or harassment under Section 1981, is inconsistent, and the verdict of liability should be set aside.

1.      **Racial Discrimination Under The NYSHRL**

Section 296(1) of the NYSHRL provides, in relevant part, as follows:

(1) It shall be an unlawful discriminatory practice:

(a) For an employer . . . because of an individual's… race… color… to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

*       *       *

(h)  For an employer . . . to subject any individual to harassment because of an individual's age, race, . . ., color, . . ., or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims.  Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories.  The fact that such individual did not make a complaint about the harassment to such employer, licensing agency, employment agency or labor organization shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable.  Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared.  It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences.

2.      **The Court's Charge With Respect To The Racial Discrimination Claim Under Section 1981 and The NYSHRL**

The Court charged the Jury as to the three legal elements of the Section 1981 racial discrimination claim.  (Riso Aff. at Exhibit A at 521-25.) [4]

As to the second element, the Court instructed the Jury as follows:

The second element of plaintiff's Section 1981 claim is that the defendants *intentionally discriminated against the plaintiffs on the basis of race.*

---

[4] References to "Riso Aff." are to the accompanying affidavit of Dula's attorney, Gerard A. Riso.

(*Id.* at 522 [emphasis added].)

> "Intent" means conscious aim or objective.  You act intentionally if it is your conscious purpose to bring something about.

> Now, science has not yet invented the machine – it's coming I'm sure – but they haven't invented the machine that can look into our minds and capture what was going on at any given time.  So you have to infer intent from other things, from what someone did, from what someone said, from what someone didn't do or didn't say, from all of the circumstances that surround the activity that gives you question and the issue you are considering.  *That's what it means to intentionally discriminate means to want to and to consciously have the aim or objective of bringing that out.*

(*Id.* at 524-25 [emphasis added].)

As to the claim for racial discrimination under the NYSHRL, the Court charged that the NYSHRL statute "is construed in a manner congruent with federal antidiscrimination laws" and that the "terms mean the same thing under state and federal law with one exception."  (*Id.* at 529).

The Court explained the one exception as follows:

> The New York State Human Rights Law does not require that harassing or discriminatory conduct be severe or pervasive, which is a requirement under federal law.  Instead, under the New York State Human Rights Law harassment is any unlawful discriminatory practice that subjects on [sic] individual to inferior terms, conditions or privileges of employment.  So it is a somewhat low standard.

(*Id.* at 529-30.)

**3.     The Lower Standard Under The NYSHRL Does Not Provide A Basis To Reconcile The Jury's Verdict**

The "somewhat low standard" under the NYSHRL -- which, unlike Section 1981 does not require the harassing or discriminatory conduct to be severe or pervasive, but rather requires that the conduct subjected Plaintiffs to inferior terms, conditions or privileges of employment -- does not provide a basis to reconcile the inconsistent verdicts.

Plaintiffs' claims of racial discrimination are premised on two racial epithets allegedly uttered by Dula, one allegedly overhead by Wright in early January 2020 (*i.e.*, "those black

bitches"), and the other allegedly overheard by Foster in mid-May 2020 (*i.e.,* "dirty Jamaicans"). At trial, Dula vehemently denied having made those statements, or any racially derogatory statement at any time.

Plaintiffs' counsel argued before the Jury that these racial epithets were "horribly racist" and changed and altered for the worse the workplace environment for Plaintiffs.  (*Id.* at 16-17, 44, 296, 492-93.)

Thus, the case turned on whether or not the Jury believed that the Plaintiffs had proven by a preponderance of the credible evidence that Dula had uttered the racial epithets.  Without proof of those statements, there was simply no evidence in the record from which the Jury could find that Dula harbored any racial animus or intentionally discriminated against or harassed Plaintiffs because of their race.

By finding that Dula was not liable under Section 1981, the jury necessarily found that Plaintiffs had *not* proven that Dula had, in fact, made the racial epithets because, by any measure, the use of the ugly terms "black bitches" and "dirty Jamaicans" by an employer in the presence of the employer's black Jamaican employees is, without a doubt, "severe or pervasive."

Indeed, Dula candidly admitted as much during her trial testimony.

> Q.     It would have been horribly racist if you said "those black bitches", right?
>
> A.     Yes, that would be a racist thing to say and I did not say it.

(*Id.* at 44.)

> Q.     And you agree that it would be horribly racist for an employer to refer to her employees as "dirty Jamaicans", true?
>
> A.     True, if it had happened.

(*Id.* at 296.)

This Court, in ruling on Defendants' motion *in limine* to preclude Plaintiffs' expert witness, aptly observed that "calling someone a 'black bitch' or a 'dirty Jamaican' is self-evidently racist" and constitutes "an indubitably racist remark." (Decision and Order on Motions *In Limine*, dated August 29, 2023, at 8 and 7 (Doc. No. 58).)

These racial epithets are outrageously abhorrent, and, if proven, would have been found to be "severe" or "pervasive" acts of racial discrimination or harassment under Section 1981. *See Banks v. GM, LLC*, 81 F.4th 242, 262 (2d Cir. 2023). ("A single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace.")

As the Second Circuit observed in *Banks*:

> [T]hat perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n****r.' The epithet has been described as a term that sums up . . . all the bitter years of insult and struggle in America, a pure anathema to African-Americans, and probably the most offensive word in English. Courts have also held that use of the word 'monkey' or derivative terms is similarly odious and that their use within the workplace constitutes compelling evidence of a racially hostile work environment.

*Id.* at 266. *See Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n[****]r' by a supervisor in the presence of his subordinates"), *abrogated on other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405 (2006); *Hill v. Rayboy-Brauestein*, 467 F. Supp.2d 336, 360 (S.D.N.Y. 2006) ("The use of a racist epithet is certainly evidence of racial discrimination. Perhaps no single act can more quickly alter the conditions of employment than the use of an unambiguously racial epithet such as 'n[****]' by a supervisor in the presence of his subordinate.")

Since the Jury found Dula not liable under Section 1981, they must have necessarily found that she had *not* uttered the racial epithets, since those two statements are clearly severe or pervasive.  As such, without these epithets, there was no evidence that Dula had any racial animus or had acted intentionally to discriminate or harass Plaintiffs because of their race.  Thus, there was no basis upon which to then find intentional racial discrimination under the NYSHRL based on any other act of Dula.

Moreover, the alleged acts of Dula subsequent to and separate from the alleged racial epithets were *not* alleged by Plaintiffs to be separate acts of racial discrimination or harassment.  Rather, the conduct was alleged to have been in *retaliation* for having complained about the acts of racial discrimination (*i.e.*, the racial epithets).  Specifically, Plaintiffs' counsel argued that the subsequent alleged conduct were actions taken by Dula to force Plaintiffs to quit because she allegedly feared a lawsuit.  (*Id.* at 22-23, 492-93.)

As discussed below, to the extent any of these other acts could have been viewed by the Jury as acts of racial discrimination, as opposed to acts of retaliation, by finding no liability on the retaliation claims, the Jury necessarily found that any such conduct by Dula constituted legitimate and non-pretextual employer-actions, and thus such acts could not constitute intentional racial discrimination for this reason as well.

**C.**     **The Verdict Finding Dula Liable For Racial Discrimination Under The NYSHRL Is Inconsistent With The Verdict Finding Dula Not Liable For Retaliation Under Both The NYSHRL and Section 1981**

The verdict finding Dula liable for racial discrimination or harassment under the NYSHRL, but not liable for racial retaliation under the NYSHRL and Section 1981, is inconsistent, and the verdict of liability should be set aside.

1.     <u>**Retaliation Under The NYSHRL**</u>

Under Section 296(1)(h), it is an unlawful discriminatory practice to subject any individual to harassment on the basis of race "because the individual has opposed any practices forbidden under this article. . . ."

Section 296(7) further provides:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

2.     **The Court's Charge With Respect To Retaliation Under Section 1981 and The NYSHRL**

The central acts of retaliation alleged by Plaintiffs were the cut in Plaintiffs' pay in June 2020 and the termination of their employment in August 2020.  The Court specifically highlighted this in its instructions to the Jury:

> In addition to alleging discrimination, the plaintiffs alleged that they were retaliated against for engaging in protected activity when the defendants cut their pay and ultimately fired them again in violation of Section 1981.

(*Id*. at 525.)

The Court instructed the Jury as to the four elements of the Section 1981 retaliation claim, as follows:

> To prevail on this claim, the plaintiffs must prove four elements by a preponderance of the evidence.  The first element the plaintiffs must prove to recover on a retaliation theory is they engaged in something called protected activity.  For purposes of retaliation claim a person engages in protected activity when she opposes an aspect of her employment that she believes to be discriminatory.  In this case we're talking about race discriminatory. Complaining about race discrimination in the workplace is protected activity.  So gathering evidence of race discrimination or bringing or planning to bring a lawsuit.

*     *     *

The second element the plaintiffs must prove by a preponderance of evidence is that the defendants were aware that the plaintiffs were engaged in the activity that qualifies as protected activity.

Now the awareness element can also be satisfied if the plaintiffs prove that the defendants believed that the plaintiffs were engaging in or preparing to engage in a protected activity, each of the plaintiffs had not yet actually engaged in that activity.

The third element that the plaintiffs must prove is that they suffered a materially adverse employment action.  As you know in this case the plaintiffs assert that their pay was significantly reduced and that they were fired.  I charge you that both of those qualify as materially adverse employment actions.

The forth [sic] and final element that the plaintiffs must prove is that the defendants subjected them to the materially adverse employment actions because of their participation in a protected activity.  This is called but-for causation.

(*Id*. at 525-27.)

As to the NYSHRL retaliation claim, the Court charged that the state claim had the same four elements as the Section 1981 retaliation claim.  (*Id*. at 530-31.)

The Court further instructed the Jury that Defendants had, in fact, articulated legitimate non-retaliatory reasons for their actions.  As such, the Court charged that should the Jury find that Plaintiffs established the four elements of the retaliation claims, Plaintiffs still had to prove that Defendants' explanations for their actions were not pretextual.  (*Id*. at 531-34.)

### 3.    The Verdict Finding Dula Liable For Racial Discrimination Under The NYSHRL Cannot Be Reconciled With The Verdicts Finding Dula Not Liable For Retaliation Under Both The NYSHRL and Section 1981

By finding that Dula was not liable for retaliation, the Jury could not have found that any of the alleged retaliatory acts constituted acts of racial discrimination or harassment.  Specifically, the element of intent, which is necessary in order to find racial discrimination or harassment under both the NYSHRL and Section 1981, would be negated by the Jury 's verdict that Dula was not liable for retaliation under either the NYSHRL or Section 1981.

The alleged acts of retaliation consisted of: moving Plaintiffs (*and Defendants' children*) in May 2020 to a connected wing of the Bridgehampton home; Dula's placement of translucent film over their kitchen window (which Defendants' testified was for privacy reasons as the window had a vantage-point to their bedroom and dressing room); Dula's asking Wright to check her bedroom to see if she could find her misplaced jewelry; Dula's inquiry as to whether Foster had been in the guest house (which Defendants showed was prompted by Dula finding a diaper in the trash can inside the guest house); Dula's text message to Wright concerning the use of the water cooler (as to which Dula made clear she was merely advising Wright of the actions of Dula's sister); the video camera over the baby's crib (as to which Plaintiffs admitted they did not voice any complaint and as to which they offered no proof that the camera was targeted over their bed); the cut in Plaintiffs' pay in June 2020 (which Defendants established was warranted given the ages of the older children, the need to bring in other caregivers and the end of the baby nurse period); and the termination of Plaintiffs' employment in August 2020 (which Defendants established was because they had just discovered an empty box that had contained a secret video and audio recording device disguised as a clock radio in Plaintiffs' shared bedroom in the New York City apartment, which Dula and Snow made clear constituted an alarming invasion of privacy and a violation of Plaintiffs' signed confidentiality agreements.[5]

By finding that Dula was not liable for retaliation for any of these acts, the Jury must have found, and it must be, that none of these acts constituted acts of racial discrimination or harassment.

(1) To the extent the Jury may have found that Dula, in doing any of these acts, was not

---

[5] The Jury declined to award any damages to Plaintiffs with respect to their claim to recover their full pay during the period between the June 2020 pay-cut and the termination of their employment in August 2020.  By declining to award any such damages, the Jury found that there was no impropriety with respect to the pay-cut or the termination.

aware that Plaintiffs were engaged in protected activity, then the Jury could not have found that Dula acted with intent to discriminate or harass Plaintiffs because of their race when she allegedly did any of the complained of acts; or

(2)  Even if the Jury may have found that Dula was aware that Plaintiffs believed they were engaging in protected activity (whether or not Plaintiffs had a good faith reasonable belief that the activity they were opposing constituted illegal racial discrimination), the intent element for racial discrimination still would be negated by the Jury's finding that Dula's actions constituted legitimate non-pretextual employer-actions.

It is respectfully submitted that legitimate and non-pretextual acts by an employer cannot be deemed to be acts of intentional racial discrimination or harassment.

**D.**   **The Jury Verdict Finding Dula Liable For Racial Discrimination Under The <u>NYSHRL Is Against The Weight of the Evidence</u>**

To the extent that the Court finds that the Jury could have found that one or both of the racial epithets were uttered by Dula, but were not severe or pervasive under Section 1981, but nonetheless subjected Plaintiffs to inferior terms, conditions or privileges of employment under the NYSHRL, then the Court, we respectfully urge, should find the verdict of liability to be against the weight of the evidence. *See Pierce v. City of N.Y.*, 805 Fed. Appx. 70, 71, 2020 U.S. App. LEXIS 16125, **3 (2d Cir. 2020) (finding that the district court "did not abuse its discretion in ordering a new trial" where the underlying verdict was found to be against the weight of the evidence); *Okeke v. N.Y. & Presbyterian Hosp.*, 275 F. Supp. 3d 470, 484 (S.D.N.Y. 2017) (granting a new trial where the jury's conclusion with regard to the plaintiffs' age discrimination claim was "not entirely unsupported", but was nonetheless "against the weight of the evidence".)

As Defendants argued at trial, Wright's testimony concerning the alleged "black bitches" comment was not credible, as she could not explain the glaring and material inconsistent

allegations alleged in her Complaint.  (Doc. No. 1.)   In her Complaint, Wright alleged a markedly different version of the events than she testified to at trial.

In her Complaint, Wright alleged that in early January 2020, Dula's kitten "Scotty" ran out of the house and under a parked car on the driveway.  She alleged that she "promptly grabbed a broom, coaxed the kitten out from under the parked car, and back into the house."  It was only after Scotty had returned to the house, and as she was returning the broom to the mud room, that she alleged in her Complaint that she heard Dula's oldest child tell his mother "that 'Scotty' got outside and was under the parked car. . . ."  It was at that moment, Wright alleged in her Complaint, that "Dula angrily exclaimed "***Those Black bitches!***"  (Complaint at ¶¶ 50-53 [emphasis in original].)

Thus, under the version in her Complaint, a publicly filed pleading upon which her entire case was based, Wright was the hero, as she had rescued the kitten by promptly grabbing the broom and coaxing the kitten out from under the car and back into the house, on a winter day.  Child One, according to Wright in her Complaint, spoke to his mother in the past tense, advising his mother as to what had occurred.

At trial, Wright sought to dramatically change her account by rearranging the order of events so that it might be more plausible that Dula would hurl such angry words – *racial epithets that Wright admitted she had never before or after heard Dula utter.*  (Riso Aff. at Exhibit A at 228.)  Clearly, it made no sense that Dula would, for the first and only time shout such vile words in Wright's presence (and in the presence of her small children) *especially after* Wright had just rescued the kitten.

So, at trial, Wright re-ordered the events, spinning a version where the kitten was still outside the house and under the car, and thus in danger on a winter day.  At trial, she testified that

13

it was at that moment that she claimed Dula screamed the racially derogatory words, which Wright claimed at trial to have overheard as she was on her way to get the broom to then use to retrieve the kitten.   And, under her new version, Child One was no longer telling his mother what had happened by speaking in the past tense (as she had quoted him in the Complaint), but, according to her trial testimony, he was advising his mother in the present tense as to what was happening – "Mama, Mama, Scotty's under the G-Wagon".  (*Id.* at 219.)

Wright testified at trial as to these critical events as follows:

> A.      So I was going to see if I can get the broom to see if I could lure the kitten back to the house, when I heard Ms. Dula remark: "Those black bitches"….

(*Id.* at 202.)

> THE COURT:  No, no.  Did you go over to the car and put the broom under the car to try to get the cat out?

> THE WITNESS:  I think he went back inside.  All right.

> THE COURT:  Did you do it?

> THE WITNESS:  No.

*      *      *

> Q.      Okay.  At what point did Scotty come into the house?

> A.      He came back in the house cause the door was opened.

> Q.      Okay. So, Scotty comes back?

> A.      [Child No. 1] and [Child No. 2] was there telling him to come in come, Scotty, come, come.
*      *      *

> Q.      But it is your firm recollection as you, if I'm understanding your testimony today, that little [Child One] said "Mama, Mama, Scotty's under the G-Wagon" while Scotty was still under the G-Wagon?

> A.      Yes.

14

Q.      So he is speaking in the present tense?

A.      Yes, he's telling his mama.

Q.      He not telling his mama what had happened.  He is telling his mom what is happening?

A.      Yes.

Q.      And so while the cat is still under the car it's your testimony that that's the point in time when Elyse Dula said "Those black bitches"?

A.      Yes.

                    *       *       *

Q.      So according to this complaint, according to your complaint, you took the broom, you coaxed the kitten from under the car, you were successful cause the kitten got back into the house; do you agree?

A.      Yes, but I don't remember.

Q.      But that's what that paragraph says, right?

A.      Yes, I see it.

                    *       *       *

Q.      So here in the complaint you are alleging that little [Child No. 1] is telling us [sic] mother what had happened, right?

A.      Yes.

(*Id.* at 216-223.)

Wright could not even keep her time-line straight.  In her trial testimony, the event no longer occurred in early January 2020, as she alleged in her Complaint, but *during COVID*, which would have been several months later.  (*Id.* at 201.)

Wright's testimony was further undermined when it was revealed that she had failed to pay the income taxes that she owed on the hundreds of thousands of dollars of income that she earned from Defendants during the two years of her employment.  (*Id.* at 226; Trial Exhibit 49.)  *See, e.g., U.S. v. Beridze*, 415 Fed. Appx. 320, 328, 2011 U.S. App. LEXIS 5984, **13 - 14 (2d Cir. 2011)

(defendant's failure to pay income taxes was probative of the defendant's "character for truthfulness.")

Wright's material and unexplained inconsistencies regarding the seminal event rendered her testimony entirely incredible and unworthy of belief.

Foster's testimony regarding the alleged "dirty Jamaican" remark in mid-May 2020 was also shockingly and materially inconsistent with her Complaint allegations.

In her Complaint, Foster alleged an elaborate back-drop to the events leading up to her allegedly having overheard Dula make the "dirty Jamaicans" comment.  The Complaint alleged that Dula made the comment to an unidentified person during a conversation about construction of a separate unconnected dwelling at her new home, in order to give Dula's alleged derogatory statement context and to make it appear that her derogatory statement was topical to that alleged conversation.

In her Complaint, Foster alleged that: (a) "[d]uring the week of May 17-24, 2020, Defendants were nearing completion of a construction project to relocate the servants' quarters in their Hamptons home from the main house to a separate unconnected dwelling"  (Complaint at ¶ 57); and (b) "[a]t or near the end of that week, Foster overheard Dula speaking to someone else about the completion of that project, after which Dula added 'I'm happy to be getting these dirty Jamaicans out of my house.'"  (Complaint at ¶ 58.)

At trial, Foster was forced to admit that the scene she set in her Complaint was a complete fabrication.  *She also admitted that she had never before or after heard Dula utter any racially derogatory remark.*  (Riso Aff. at Exhibit A at 144.)

Foster had no choice but to acknowledge that there was *no* construction project going on at that time and that there was *no* unconnected dwelling.  (*Id*. at 150.)  Even more damning, Foster

was forced to concede that she did not hear Dula speaking to "someone else" *about a construction project* and that she had no idea what the conversation was about when she allegedly overheard Dula make the "dirty Jamaican" remark.

> Q.     Did you hear her in any other part of the conversation she was talking about at the time.
>
> A.     No.  I only heard her say, the only thing I heard when "I'm happy to get these dirty Jamaicans out of my house" and then I took what I was tooking up–
>
> Q.     Okay.  But you didn't hear what anyone else said to her?
>
> A.     I only hear when she said: "I'm happy to get those dirty Jamaicans out of my house."  That's what I heard she say.

(*Id.* at 147.)

The unassailed evidence at trial established that Defendants moved their family into the Bridgehampton home without the assistance of any movers, since the move occurred during COVID.  (*Id*. at 345.)  Foster testified at trial that Dula was speaking to a woman in the washroom of the new rental home.  (*Id*. at 145-46.)  Foster claimed that she was about eight feet away and could not see into the washroom to identify the woman that Dula was speaking with.  (*Id.* at 146.)  Foster testified that she did not know whether Dula was speaking with Kaitlyn Paul (Dula's step-sister) or Marleny Rodriguez (Defendants' former housekeeper) at that time.  (*Id*.)

Kaitlyn Paul testified that she was present during the move and that at no time did she hear Dula make such a remark, and that she had never heard her sister speak this way.  (*Id.* at 418.)

Marleny Rodriguez, the only truly disinterested witness at the trial, testified that she was also present and that she did not hear Dula make such a remark at that time, or at any other time.  (*Id.* at 444.)[6]

_____

[6] Snow also testified that Dula had never made such a remark in his presence, and that Foster had never complained to him that Dula had ever made such a remark (*id.* at 407-08, 410).

Foster's credibility was also seriously undermined when it was revealed that she had not paid the income taxes that she owed on the almost Eight Hundred Thousand Dollars of income that she earned during the three years that she was employed by Defendants.  (*Id.* at 134; Trial Exhibit 47.)

Foster's material and unexplained inconsistencies regarding this second seminal event rendered her testimony entirely incredible and unworthy of belief.

In sum, any finding by the Jury that Dula uttered one or both of the racial epithets would be overwhelmingly against the weight of the evidence.

**E.    In The Event This Court Grants Relief Under Rule 59, The Court Should Decline to Exercise Supplemental Jurisdiction Over The Remaining NYSHRL Claim**

In the event the Court grants relief under Rule 59, the Court should decline to exercise supplemental jurisdiction over the remaining state law claim; the NYSHRL claim should be dismissed without prejudice to refiling in state court.  *See Young Kui Chen v. Wai ? Café Inc.*, 2017 U.S. Dist. LEXIS 121635* (S.D.N.Y. 2017); 28 U.S.C. § 1367(c).

"The issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation."  *Oneida Indian Nation v. Madison County*, 665 F.3d 408, 437 (2d Cir. 2011)

In *Young*, the plaintiff's claims under the federal Fair Labor Standards Act (FLSA) were dismissed.  However, the jury found defendants liable under the New York Labor Law (NYLL). After an appeal brought by one of the defendants, the Second Circuit vacated the judgment in part and found that certain documents had been improperly excluded at trial.  On remand, the Second Circuit also directed the Court to determine whether certain notices were required under the NYLL.

The Court declined to exercise supplemental jurisdiction over the remaining NYLL claims, stating as follows:

The decision whether to exercise supplemental jurisdiction is a discretionary one left to the district court. *Kolari v. New York Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006). In determining whether to decline jurisdiction under one of these exceptions, a district court should "balance[] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (*quoting Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).)

Although § 1367(c) is "permissive rather than mandatory[,] the district court's discretion . . is not boundless." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003). The factors to be considered will generally "point toward declining to exercise jurisdiction over the remaining state law claims" in cases when the federal claims are eliminated before trial. [Citation omitted.] The Second Circuit has "repeatedly held that a district court particularly abuses its discretion when it retains jurisdiction over state law claims raising unsettled questions of law following dismissal of all original-jurisdiction claims." [Citation omitted.]

*Id.* at *8.

Based on the applicable factors, the Court in *Young* dismissed the NYLL claim without prejudice to refiling in state court.

These factors applied here also warrant dismissal. Judicial economy, convenience and fairness are equally served whether the case is retried in this Court or in state court. Considerations of comity and deference to the state court in applying the state statute favor dismissal. This is especially so given that the only substantive difference between Section 1981 and the NYSHRL is the elimination of the "severe and pervasive" standard under the NYSHRL. The NYSHRL was amended in this regard in 2019, and thus the operative language ("inferior terms, conditions or privileges of employment") is still in the early stages of judicial interpretation and application, and thus presents "unsettled" issues of law, further militating in favor of dismissal. *See Yost v. Everyrealm, Inc.*, 2023 U.S. Dist. LEXIS 31246, *31, 2023 WL 2224450 (S.D.N.Y. 2023) ("The case law, however, has not definitely resolved whether the effect of the 2019 amendment is to make the NYSHRL's standard identical to that of the NYCHRL – or merely closer to it."); *Wheeler v. Praxair Surface Techs., Inc.*, 2023 U.S. Dist. LEXIS 171430, *31, 2023 WL 6282903 (S.D.N.Y.

2023) ("The case law, however, has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law.").

<u>**POINT II**</u>

**JUDGMENT SHOULD BE ENTERED IN DEFENDANT DULA'S
<u>FAVOR PURSUANT TO RULE 50(b)</u>**

At the conclusion of Plaintiffs' direct case, Defendants moved for judgment as a matter of law pursuant to Rule 50(a).  The Court denied the motion (Riso Aff. at Exhibit A at 412), although the Court had noted that Plaintiffs' evidence was "thin".  (*Id*. at 429.)

Pursuant to Rule 50(b), Dula herein renews her motion for judgment as a matter of law vacating the judgment against her on the NYSHRL racial discrimination claim and entering judgment in Dula's favor dismissing that claim.  In doing so, we respectfully refer to and incorporate the grounds for dismissal urged by Defendants in making that motion.  (*Id*. at 411-12.)

Rule 50(b) governs the renewal of a motion for judgment as a matter of law, such that "[a]fter the jury has returned its verdict, Rule 50(b) allows the party to 'renew' his motion … limited to those grounds that were 'specifically raised in the prior [Rule 50(a)] motion. . . . '" *McCardle v. Haddad*, 131 F.3d 43, 50-51 (2d Cir. 1997).  When deciding a Rule 50(b) renewed motion for judgment as a matter of law, the district court may only: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) or a new trial; or (3) direct the entry of judgment as a matter of law."  *Saleh v. Pretty Girl*, 2022 U.S. Dist. LEXIS 160952 at *20 (E.D.N.Y. 2022).

"[T]he district court may set aside the verdict only where there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or… [there is] such an overwhelming amount of evidence in favor'" of the moving party that it would be unreasonable to make a ruling against them.  *Cross v. N.Y. City*

*Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005); *see also Walsh v. City of New York*, 742 Fed. Appx. 557, 561, 2018 U.S. App. LEXIS 21519, **4 -5 (2d Cir. 2018), *citing Kinneary v. City of N.Y.*, 601 F.3d 151, 155 (2d Cir. 2010) (a Rule 50(b) motion may be granted only "'if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it].'")

Judgment as a matter of law may be granted following a jury verdict "'only if the court, viewing the evidence in the light most favorable to the non-movant, concludes that a reasonable juror would have been *compelled* to accept the view of the moving party.'"  *U.S. Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43, 54, 2019 U.S. App. Lexis 27358, **15 - 16 (2d Cir. 2019) [Emphasis in original.]  In doing so, the Court "may not 'weigh evidence, assess credibility, or substitute its opinion of the facts for that of the jury.'" *Campodonico v. Wal-Mart Stores E., LP*, 2023 U.S. Dist. LEXIS 175918, *20 (S.D.N.Y. 2023).

Here, the lack of credible evidence to support  Plaintiffs' claims of racial discrimination under NYSHRL compels the entry of a judgment in Dula's favor as a matter of law.

As discussed above, there is a complete absence of evidence upon which to find that Plaintiffs had proven that Dula had uttered either racial epithet.  As such, there was no evidence to find that Dula harbored any racial animus or had intentionally discriminated against or harassed Plaintiffs because of their race.  Further, for the reasons stated above, since the subsequent and separate conduct allegedly committed by Dula was found by the Jury not to constitute retaliation under either Section 1981 or the NYSHRL, such conduct cannot support a finding that any such act constituted racial discrimination or harassment.

## **CONCLUSION**

For the reasons stated herein, pursuant to Rule 50(b) judgment should be entered in favor of Dula on the NYSHRL racial discrimination claim.  If the Rule 50(b) motion is denied, pursuant to Rule 59, a new trial should be ordered as to Dula on the NYSHRL racial discrimination claim. In that event, this Court should decline to exercise supplemental jurisdiction over the remaining NYSHRL claim, and the claim should be dismissed without prejudice to refiling in state court.

Dated: New York, New York
      December 1, 2023

                                    **MANTEL McDONOUGH RISO, LLP**

                                    By: /S/ Gerard A. Riso_____
                                        Gerard A. Riso  (GAR 8465)
                                    410 Park Avenue, 17th Floor
                                    New York, New York 10022
                                    (212) 599-1515
                                    Gerard.Riso@MMRLLP.com
                                    *Attorneys for Defendant Elyse Dula*