UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CORDIA FOSTER and CISLYN WRIGHT,

            Plaintiffs,

  -against-                                        21 civ. 11224 (CM)

ELYSE DULA a/k/a/ ELYSE SNOW
and IAN K. SNOW,

            Defendants.

------------------------------------------------------------x

## DECISION ON POST-TRIAL MOTIONS

McMahon, J.:

        This case was tried to a jury in October 2023, resulting in a plaintiffs' verdict against defendant Elyse Dula and a defendant's verdict in favor of defendant Ian K. Snow. The jury awarded $8,800 in compensatory damages to each of the plaintiffs after finding that Ms. Dula had created a discriminatory hostile work environment in violation of the New York State Human Rights Law. However, the jury found in Ms. Dula's favor on the plaintiffs' claims of discrimination under 42 U.S.C. § 1981 and for retaliation under both §1981 and the New York State Human Right Law. Although they are the prevailing parties, the plaintiffs have appealed the court's refusal to charge punitive damages – about which more below.

        Presently pending before the court are two post-trial motions: a motion by Ms. Dula seeking a new trial (Dkt #86), and a motion from plaintiffs' counsel for an award of attorneys' fees (Dkt #82).

        The new trial motion is denied.

        The attorneys' fee award motion is granted in the amount of $25,000, which amount is subject to reduction to $17,600 if Mr. Lucas fails to either explain why punitive damages are allowable under New York State Human Rights Law for the single claim on which his clients prevailed or admits that they are not (which would moot the appeal and save the parties additional expenses). Mr. Lucas is also awarded $2,766.15 in costs.

**Motion for a New Trial**

        Dula moves pursuant to Fed. R. Civ. P. 59 for a new trial and for the entry of judgment in her favor pursuant to Fed. R. Civ. P. 50(b), on the ground that the jury's findings – that she did not

discriminate against the plaintiffs in the making of an employment contract on the basis of race in violation of Section 1981, but did discriminate against the plaintiffs on the basis of race under the NYSHRL – are inconsistent. That is incorrect.

The standard for liability for hostile work environment race discrimination under the NYSHRL is different from, and lower than, the standard for liability for the same conduct under Section 1981 (or Title VII). This was not always the case, but it has been so since the State law was amended in 2019. *See Cooper v. Franklin Templeton Investments*, No. 22-2763-cv, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023).

The court instructed the jury, *without objection*, that, in order to find a defendant liable to a plaintiff for race discrimination under Section 1981, they would have to find by a preponderance of the evidence each of the following elements: that plaintiffs were members of a protected class (conceded); that they were harassed and subjected to a hostile work environment because of their race; and that defendants' actions deprived them of their right to enjoy the same benefits, privileges, terms and conditions of a contract of employment that white Americans would enjoy. Of particular note, at page 21 of the charge (Tr. 522), the jury was told that, under federal law, any harassment had to be severe and pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

The court instructed the jury, *again without objection*, that, in order to find a defendant liable to a plaintiff for race discrimination under the NYSHRL, they would have to find by a preponderance of the evidence each of the following elements: that an employer/employee relationship existed between plaintiffs and defendants (conceded); that defendants believed plaintiffs to be members of a protected class (black and Jamaican); that they were harassed and subjected to a hostile work environment because of their membership in a protected class, thereby subjecting them to inferior terms, conditions or privileges of employment; and that a reasonable person in plaintiffs' position would have considered the conduct harassing or qualifying as a hostile work environment. Of particular note, at page 32 of the charge (Tr. 529–30), the jury was told that the NYSHRL was to be construed congruently with federal antidiscrimination law, but with one notable exception – the NYSHRL does not require harassing or discriminatory conduct to be "severe or pervasive, which is a requirement under federal law." This instruction reflected the 2019 change in the NYSHRL.

As should be obvious, the elements of the two claims are not identical. Under the NYSHRL, harassment on the basis of membership in a protected class does not need to be severe or pervasive in order to create a hostile work environment; whereas under Section 1981, discriminatory conduct must be severe or pervasive in order to render a workplace hostile and thereby deprive a plaintiff of equal benefits under a contract of employment. By finding Ms. Dula liable under state but not federal law, the jury obviously concluded that Ms. Dula subjected the plaintiffs to discriminatory harassment on the basis of their race or national origin – we do not know why, but one can guess from the jury's note that the jurors thought Ms. Dula made at least one of the two racially offensive remarks attributed to her by the plaintiffs – but that Ms. Dula's conduct in this regard did not qualify as "severe and pervasive," so as to create a hostile work environment as that term is understood under federal law, and thereby deprive them of the rights guaranteed by Section 1981.

Moreover, the court directed the jury to consider every claim that was asserted in the lawsuit separately, and instructed that the verdict on one claim did not dictate the verdict on any other claim. I did not tell the jury that it had to render identical verdicts on the discrimination/hostile work environment claims brought under the two different statutes. Dula never requested that I give such an instruction, and it would in any event have been error to do so. Nor did she object to the instruction that I did give.

Because there is no inconsistency between the verdicts, and the jury's finding of a violation of the NYSHRL rests on some evidence, the motion for a new trial and a directed verdict is DENIED.

**Motion for Attorneys' Fees**

Having prevailed as against Ms. Dula on their claim for a violation of the NYSHRL, plaintiffs are entitled to an award of attorneys' fees. N.Y. Exec. Law § 297(10). Only Ms. Dula is liable for attorneys' fees; Mr. Snow is not, as he was found not liable on all counts asserted against him.

Mr. Lucas, plaintiffs' attorney, has made a motion that is less than straightforward. He begins from the proposition that he normally charges $675/hour, except when clients demonstrate financial need (which the plaintiffs in this case, who were handsomely compensated for their work, did not). His diary entries show that he spent 409 hours litigating this case; he reached this number after excluding a number of items, including: work done on a wages and hours case pending in the New York State Supreme Court (which is not "this case"); work done preparing expert testimony that was in the end not offered at trial; time spent preparing for and conducting the deposition of Ian Snow, who was found not liable; and time spent by Mr. Lucas' associate, Andrew Sack, and his co-counsel, Steven M. Sack (put otherwise, Mr. Lucas seeks to recover only for time expended by him).

Having derived that number, Mr. Lucas deducted 25% of those hours, which were attributable to mostly unspecified matters (but including time negotiating with Mr. Snow over plaintiffs' pre-and-post pay cut wages, on which claim plaintiffs did not succeed). This reduced the number of Mr. Lucas' allegedly compensable hours to 306.8.

Mr. Lucas then generously offered to reduce his request to a mere 135 hours, at a reduced hourly rate of $590, for a total fee request of $79,650. However, this offer was conditioned on Ms. Dula's not contesting that amount.

Because everything in this case is contested, Ms. Dula does indeed contest Mr. Lucas' proposal. In fact, she (and her partner, Mr. Snow) urge the court to award Mr. Lucas nothing at all. Indeed, Mr. Snow renews his request for an award of attorneys' fees in his favor – which request was summarily denied at the conclusion of the trial and is summarily denied again.

As Ms. Dula does not consent to Mr. Lucas' offer, I consider it to be off the table, and his fee request to be for a total of 306.8 hours -- expended solely by Mr. Lucas, and on tasks he argues relate to his case against Ms. Dula -- at his normal rate of $675/hour – for a total of $207,080.

The hostility between counsel in this case, and between the parties and counsel, comes through in everything they write. So let me be clear: an award of fees to a prevailing or a substantially prevailing party under the New York State Human Rights Law is discretionary with the court. In setting any such award, I have no interest in any of the following: settlement negotiations, whether pre-or-post lawsuit; anything about the wages and hours lawsuit brought by the extremely well-paid plaintiffs in Bronx County, about which I know almost nothing and do not care to learn more; the alleged motive of the plaintiffs and counsel in bringing this case and/or including Mr. Snow as a defendant;[1] press coverage of this case; the parties continuing disagreement over various factual issues that came up during the case; or *ad hominem* attacks against opposing counsel.

In determining an appropriate fee award, the court considers the factors set out in the case of *Arbor Hill Concerned Citizens Neighborhood Ass' v. County of Albany*, 522 F.3d 182, 186 n. 3 (2d Cir. 2007):

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the level of skill required to perform the legal service properly;

(4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the attorney's customary hourly rate;

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved in the case and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the "undesirability" of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

---

[1] The parties stipulated to the facts that Mr. Snow and Ms. Dula both hired and both fired the plaintiffs, so effectively both were stipulated to be their employers. Pretrial Order, at 2–3. Therefore I do not understand why Mr. Snow makes such a fuss about being sued – unsuccessfully, as it turns out – aside, of course, from the adverse publicity that followed, which he asserts has led to irreparable reputational damage. As there was an arguable basis for the plaintiffs to sue Mr. Snow, at least insofar as their (unsuccessful) claim for retaliatory reduction in their salaries is concerned (Mr. Snow paid their salaries) – a basis sufficient to deter Mr. Snow from moving for summary judgment prior to trial -- in an exercise of my discretion I decline to award attorneys fees to Mr. Snow as a prevailing party.

Mr. Lucas asserts that he expended 409 hours himself preparing and trying the case, and that additional hours were expended by an associate (with whom he is no longer associated) and with co-counsel (for whose work no payment is sought). That is quite a few hours for a case that was not at all complex and presented no novel legal issues; it is obvious that it could have been litigated to verdict with many fewer hours expended. In the absence of an award of punitive damages, the case might well have been considered an "undesirable" case, because it was highly unlikely that plaintiffs would recover a large award of damages -- the plaintiffs were extremely well paid, and few instances of discriminatorily harassing conduct, extending over a very short period at the end of their employment, were alleged, let alone proved at trial.[2] I know of no employment that Mr. Lucas had to forego to pursue this lawsuit, and he was willing to take the case on contingency (though obviously in the hope of a hefty statutory fee award if the contingency amount was small, as it was).[3] His customary hourly rate is quite high for a sole practitioner with limited overhead. There is no evidence suggesting that time limitations were imposed by either the client or the circumstances; and I know nothing to suggest that Mr. Lucas and the plaintiffs were acquainted prior to his taking on their disputes with Mr. Snow and Ms. Dula. The record contains no information about fee awards in similar cases.

All this means that most of the *Arbor Hill* factors drop out of consideration. The ones that remain do not favor a large award.

Mr. Lucas did not enjoy particular success in litigating this case. In the opinion of the court, he managed to prove that Ms. Dula, on at least one and perhaps two occasions, uttered remarks that she herself acknowledged were racist in nature – and while she denied saying such things, it is apparent from a jury note that the jurors thought otherwise. It is true that the evidence adduced in support of this was relevant both to the claim on which the plaintiffs succeeded and the claims on which they failed. But that does not affect the time expended or the need for the work done.

By contrast, no other instances of discriminatory harassment were proved, or even supported seriously with evidence; and none of the conduct that was alleged to have been taken in retaliation for the plaintiffs' reaction to those remarks – including everything from the covering of a window, to moving them into a "servants and childrens wing" in a newly rented "pandemic house," to a 50% reduction in their substantial daily pay – was found by the jury to be retaliatory. Moreover, the jurors obviously did not believe that the plaintiffs were substantially damaged by Ms. Dula's offensive conduct, since their damages award was small.

Mr. Snow – who, per the evidence at the trial, seemed to be complicit only in the alleged retaliation (no evidence was presented on any other point) – was exonerated completely.

---

[2] N.Y. Exec. Law § 297(9) limits an award of punitive damages in an action brought under that statute to cases involving housing discrimination – of which this is not one. This might explain why Mr. Lucas was unable, during the trial, to point the court to any Second Circuit case requiring me to charge punitive damages, which I declined to do.

[3] Under his retainer agreement, Mr. Lucas was entitled to 32% of the award to his clients, assuming that number exceeded any attorneys' fees awarded by the court. 32% of the award comes to $5,632.00, according to defendants' counsel.

For all these reasons, a large statutory fee award is, in the opinion of this court, uncalled for and inappropriate.

However, I refuse to award no fees whatsoever, as Ms. Dula was found by a jury of eight to have engaged in one or more instances of harassment (if not severe and pervasive harassment) of the plaintiffs. I understand that Mr. Lucas agreed to a 32% contingency fee, but the amount of that fee – less than $6,000 – is, in my estimation, insufficient to compensate him for his limited success. I therefore award him the sum of $25,000 – which works out to 55 hours at a rate of $450/hour. I find to be appropriate and reasonable given the level of Mr. Lucas' work and the amount of time needed to discover and present the one and only issue on which he seems to have succeeded.

However, if Mr. Lucas does not, within ten days of this order, either send this court authority supporting his argument that punitive damages are available under the NYSHRL in a non-housing discrimination case or admit that they are not available, I will reduce that award to $17,600 – the exact amount awarded to his clients by the jury. A considerable amount of time was expended at trial in an effort to paint the Snow/Dulas as poor and inattentive parents. This was plainly done in the hope of obtaining an award of punitive damages (since their parenting skills, as I told the jury, had nothing to do with whether they were liable for discrimination under either state or federal law). After hearing the evidence, it was not the court's inclination to charge punitive damages, and I did not do so during the initial charge. The final decision not to charge punitive damages was not made until the court heard the jury's verdict. Once I knew that plaintiffs had prevailed only under state law, and on just one claim against just one defendant, I declined plaintiffs' renewed request to charge them. (Tr. 574).[4] Mr. Lucas has yet to convince me that I was incorrect in my decision.

The court (in the person of Mr. O'Neill) expended considerable time trying to settle this case, which never should have gone to trial. After the verdict was reached, I urged the parties to try to settle once again. I am sorry that they have been unable to do so.

This is the decision and order of the court. The Clerk of Court is directed to remove the motions at Docket #82 and #86 from the court's list of open motions.

Dated: January 17, 2024

                                                                U.S.D.J.

BY ECF TO ALL COUNSEL

---

[4] Mr. Riso, defendants' counsel, did not argue that punitive damages were statutorily unavailable during the trial; he raises that point only in opposition to the motion for a new trial – and, I assume, in the Second Circuit.